[S. F. No. 4414.    In Bank.—February 1, 1906.]

## JESSIE C. HEWITT, Petitioner, v. STATE BOARD OF MEDICAL EXAMINERS, Respondent.

PHYSICIANS AND SURGEONS—REVOCATION OF CERTIFICATE BY MEDICAL EXAMINERS—POLICE POWER.—The act of 1901, providing for the revocation of the certificate of a physician or surgeon by the State Board of Medical Examiners for unprofessional conduct, in so far as it is valid, rests upon the police power of the legislature to provide all reasonable regulations affecting the public health, safety, or morals; but such regulations must apply to matters of conduct on the part of a practitioner affecting the same, and they must, in order to forfeit his right to practice his profession, be declared with such certainty and definiteness in the act that he may know exactly what they are.

ID.—UNCERTAIN AND VOID PROVISION—"GROSSLY IMPROBABLE STATEMENTS" IN MEDICAL ADVERTISING.—The provision of the statute that "all advertising of medical business in which grossly improbable statements are made" shall constitute unprofessional conduct, for which the medical examiners may revoke the certificate, without defining what statements shall be deemed "grossly improbable," and which leaves it to the whim or caprice of the medical examiners, without any standard for their guidance, is too indefinite and uncertain to be enforced by the revocation of the physician's certificate, and is void.

ID.—CERTIORARI.—The attempted revocation of the certificate of a physician under a void provision of the statute will be annulled upon *certiorari*.

APPLICATION for Writ of Certiorari to annul an order of the State Board of Medical Examiners.

The facts are stated in the opinion of the court.

John D. Pope, for Petitioner.

William Taft, for Respondent.

LORIGAN, J.—This is an original proceeding in *certiorari* to annul an order of the board of medical examiners of this state revoking the certificate of petitioner authorizing her to practice medicine and surgery. The legislature in 1901 (Stats. 1901, p. 56, c. 51) passed an act for the regulation of the practice of medicine and surgery and for the appointment

of a board of medical examiners in the matter of such regulation. Various powers are conferred upon the state board under the act, among others the power to revoke the certificate of a physician or surgeon for "unprofessional conduct," and the act undertakes to declare what shall constitute "unprofessional conduct" so as to warrant such revocation. It specifies seven particulars in which the conduct of a physician shall be deemed unprofessional. Six of these designate precise and specific acts, the commission of which shall be deemed unprofessional, and as to the seventh (designated in the act as the fourth), it is provided that "all advertising of medical business in which grossly improbable statements are made" shall also constitute unprofessional conduct.

On April 26, 1905, petitioner was engaged in the practice of medicine and surgery in the city of Los Angeles under and by virtue of a certificate issued to her by the board of managers of the Eclectic Medical Society of this state, and on that date a complaint was filed against her before the state board of examiners charging her with unprofessional conduct in advertising medical business in which grossly improbable statements appeared,—namely, in advertising in the Times, a public journal in Los Angeles, the following: "Cancer Cured. The Mrs. S. J. Bridge Remedy, the only sure cure known in the world"—with notice to call at her office in said city and investigate. Upon a hearing before said board, the petitioner appearing, answering, and contesting the charge, an order was entered by the board on August 18, 1905, revoking her certificate. Petitioner by this proceeding in *certiorari* seeks to annul the order of said board, and the ground that the board was without jurisdiction to make it under the particular provision relating to unprofessional conduct, to which we have heretofore referred, and under which it assumed to act in doing so.

It is insisted by petitioner that this particular provision of the act is unreasonable, uncertain, and indefinite; that neither the act itself nor the law defines what shall be deemed "grossly improbable statements"; that the provision in question leaves it entirely to the opinion of the persons who at any time may constitute the board to determine whether a given statement is "grossly improbable," and confers authority upon such board to create an offense under the act

and inflict punishment for its commission; and that for all these reasons this particular provision of the act in question is void. We think this position of the petitioner must be sustained. In considering this point we are not concerned with the particular merits of the proceeding before the board, but only with the principles of law which are involved in a consideration of the validity of the provision of the statute under which it acted. Legislation of the character embraced within the general scope of the act in question, in so far as it provides for the revocation of the certificate of a physician (the only matter we are concerned with), is sustained upon the ground that the legislature has authority under its general police power to provide all reasonable regulations that may be necessary affecting the public health, safety, or morals, and with this object in view to provide for the dismissal from the medical profession of all persons whose principles, practices, and character render them unfit to remain in it. As the duty of determining whether such professional or moral unfitness exists must necessarily be vested in somebody other than the legislature, it is usually committed by appropriate legislation to boards composed of men learned in their profession. Such power, however, to revoke the license of a practitioner when conferred upon a board must be under provisions of law which are reasonable, must apply to matters of conduct upon the part of the practitioner which affect the health, morals, or safety of the community, and the acts or conduct which shall render him liable to the penalty of forfeiture of his right to practice his profession must be declared with such certainty and definiteness in the act that he may know exactly what they are. The right to practice medicine is, like the right to practice any other profession, a valuable property right, in which, under the constitution and laws of the state, one is entitled to be protected and secured.

Now to consider how the provision of the act as to ''grossly improbable statements,'' warranting an invasion of this right and its destruction, accords with the principles of law announced. While the other particular acts which shall constitute unprofessional conduct are specially designated and defined in the act, it is nowhere therein pretended to define what shall constitute ''grossly improbable statements.'' While, as we have said, the right of the legislature to confer power

upon a medical board to revoke the license of a physician is granted upon the authority of the legislature to legislate in the interest of public health, safety, and morals, there is nothing in the terms of this provision authorizing the board to revoke a certificate to practice medicine on account of the publication of ''grossly improbable statements,'' from which it can be even inferred that any of these considerations prompted the legislative mind in conferring the power of revocation upon the board, or that any of them are to be taken into consideration by that body in determining whether a given statement is ''grossly improbable'' or not. Under this provision the penalty of forfeiture of a physician's license is not made to depend upon falsity in fact of any matter contained in a statement or knowledge on the part of the physician that it is false, or for the reason that it was intended or had a tendency to deceive the public or to impose upon credulous or ignorant persons, and so be harmful and injurious to public morals, health, and safety. It is a matter of no moment under the provision of the act, and is entirely immaterial whether the statement is true or false, beneficial or injurious. If, in the opinion of the board, the statement is ''grossly improbable,'' the certificate to practice is to be revoked. The right of the physician to be secure in his privilege of practicing his profession is thus made to depend not upon any definition which the law furnishes him as to what shall constitute ''grossly improbable statements,'' but upon the determination of the board after the statement is made and simply upon its opinion of its improbability. No definite standard is furnished by the law under this provision whereby a physician with any safety can advertise his medical business; nor is there any definite rule declared whereby after such advertisement is had the board of medical examiners shall be controlled in determining its probability or improbability. The physician is not advised what statements he may make which will not be deemed ''grossly improbable'' by the board. No rule is provided whereby he can tell whether the publication he makes will bring him within the ban of the provision or not. The advertisement in connection with his medical business may be made in entirely good faith; the statement may be of such a character that it involves no moral delinquency on the part of the physician, nor in any degree tends

to deceive or injure the public. These matters, however, have no controlling effect. If in the judgment of the board such statements are "grossly improbable" the right to practice is forfeited. Instead of furnishing some standard by which the physician can determine in advance what statements shall be treated as "grossly improbable," some definition of that term which will be a protection to him in his legal right to advertise his business, the statute, as far as his action is concerned, leaves that matter at large, but provides that after he has made the advertisement an *ex post facto* judgment of the board shall determine whether his statement is "grossly improbable" or not.

And the provision of the act, even as to the judgment of the board, furnishes no standard by which that determination shall be arrived at. Taking a given advertisement by a physician, the members of one board might conclude that it contained "grossly improbable statements," while another board might reach an entirely opposite conclusion. One might conclude that the statement while "improbable" was not "grossly" so. The advertisement of a physician which one board had determined did not come within the inhibition of the rule according to its judgment, a succeeding board might conclude did. As the provision of the act in question does not define what shall constitute "grossly improbable statements," but leaves it to be determined according to the opinions of the particular members of the board who happen to constitute it when the matter of revoking a physician's license therefor is before them, it is obvious, if such a provision can be sustained, that it could operate disastrously not only upon individual physicians, but upon physicians of a particular school. And this act in itself is capable of furnishing the illustration. It provides that the state board of medical examiners shall consist of three different schools of medicine, the majority of the board to be elected from one particular school. It is matter of common knowledge that each school of medicine is governed in the treatment of diseases and injuries by rules, principles, and practices in material respects fundamentally and essentially different, the adherents of each implicitly believing that the eradication or alleviation of disease can only be successfully attained under the peculiar principles and practices of the particular school to which he belongs; that the successful treatment of a particular dis-

ease under radically different principles of medicine practiced by another school cannot be attained. Granting the validity of the provision of the act in question for the purposes of the illustration, it is obvious that under such circumstances any advertisement of medical business by a physician whose school is represented by a minority vote on the board of medical examiners stating that a given disease can be cured by him under a method peculiar to his school of medicine, different in principle and practice from that taught by the school of which the majority of the board is composed, would subject his license to revocation under the conscientious professional opinion of the majority of the board that his statement was "grossly improbable."

We hardly think it necessary to further pursue this subject. The right which a person possesses under the constitution and the laws to practice his profession as a physician and surgeon cannot be made to depend upon a provision of a statute as vague, uncertain, and indefinite as is the provision we have been considering. If a physician's license is to be revoked for "grossly improbable statements"; if he is to be thereby deprived of his means of livelihood, of his right to practice a profession which it has taken him years of study and a large expenditure of money to qualify himself for, on the ground that he has made "grossly improbable statements" in advertising his medical business—it is requisite that the statute authorizing such revocation define what shall constitute such statements so that the physician may know in advance the penalty he incurs in making them. It is an easy matter for the legislature to declare what statements in the advertisement of medical business shall be deemed "grossly improbable," and it must do so, and not leave it to a board of medical examiners after the publication is made to determine in its judgment whether the statements were or were not "grossly improbable," and according to its particular view of the matter revoke or refuse to revoke the license. The right to practice medicine cannot be made to depend upon such a vague, uncertain, and indefinite provision. The conclusion we reach as to the invalidity of this provision is, in our judgment, sustained by the general principles announced in the main and concurring opinions in *Ex parte McNulty*, 77 Cal. 164, [19 Pac. 237, 11 Am. St. Rep. 257], and in *Matthews v. Murphy*, 23 Ky. Law Rep. 750, [63 S. W. 785].

We are of opinion, for the reasons given, that the provision of the statute in question, as far as it attempted to authorize the board of medical examiners to revoke the certificate of a physician for "grossly improbable statements" in an advertisement of medical business, is void; that in the matter at bar the state board of medical examiners had no jurisdiction to revoke the certificate of petitioner under this provision of the act; that its order in that regard was void; and it is hereby annulled and set aside.

Henshaw, J., McFarland, J., Angellotti, J., and Shaw, J., concurred.

Beatty, C. J., concurred in the judgment.