## CONSTITUTIONALITY OF THE DENTAL STATUTES.

Common Pleas Court of Hamilton County.

EX PARTE ROBERT C. CRAYCROFT.*

Decided, March 12, 1916.

*Dentists—Constitutionality of the Act Providing for a State Dental Board—Membership therein not Limited to Non-Advertising Dentists—Invalidity of Provision for Revoking Licenses—Requirement that Practice be Carried on under Individual Names also Invalid—Construction of the Statute Relating to Misrepresentation.*

1. Section 1314, providing for a state dental board and the appointment, qualification and term of its members, is a valid enactment.

2. Qualification for membership in this board is not limited by the words "legal and reputable practice to dentists who do not indulge in professional advertising.

3. Section 1325 G. C., authorizing the state dental board to revoke the license of any dentist who advertises "with a view of deceiving the public" etc., is not only class legislation, but is so indefinite in its provisions and leaves such wide discretion for the exercise of arbitrary power by the dental board as to render it invalid.

4. Section 1329-1, making the practice of dentistry unlawful unless carried on under the name of the individual practitioner, is an abuse of the police power and unconstitutional.

5. Section 12713, providing a penalty for misrepresentation of their qualifications, etc., by dentists, is a valid enactment when construed in the manner suggested by the court.

*Miller & Foster*, for Petitioner.

*Mr. Lloyd*, contra.

NIPPERT, J.

This is an action in habeas corpus on behalf of Robert C. Craycroft, asking that he be discharged from the custody of Charles L. Timberlake, constable, the said Timberlake having placed Robert C. Craycroft under arrest by virtue of a warrant issued from the court of Charles T. Dumont, justice of the peace, charging the said Craycroft with willfully, knowingly and unlawfully advertising with a view of deceiving the public, having publicly displayed in the city of Cincinnati, county of Hamilton, the following advertisement:

*Error not prosecuted.

"Dentistry. By Expert Dentists, who do all kinds of Dental Work at the Lowest Possible Price. Note our Prices: Gold fillings, 75 cts. up. Silver fillings 50 cts. Gold Crowns $3.00 Full set of teeth $3.00. Painless Extracting 50 cts. Examination Free.
PHILADELPHIA PAINLESS DENTISTS,
NORWOOD, OHIO."

Also, that the said Robert C. Craycroft did, willfully, knowingly and unlawfully practice dentistry under a false name and under a name different from his own, to-wit, under the name of "Philadelphia Painless Dentists," contrary to the statute in such cases made and provided and against the peace and dignity of the state of Ohio. Under the above-mentioned warrants the said Craycroft was taken in custody to answer the said complaint and a writ of habeas corpus issued.

The question before the court is, whether there was a violation of the statute, and if there was such a violation, whether the statute aforesaid is contrary to the Constitution of the state of Ohio and the Bill of Rights.

The case was fully argued by counsel for the state and counsel for the prisoner.

The constitutionality of the so-called Lloyd bill, that is, the dental statute, passed May 7, 1915, (see 105 Ohio Laws, page 295), is involved.

Counsel for Craycroft attacks the constitutionality of the entire dental act, being Sections 1314 et seq, General Code.

Among the particular sections of the Lloyd bill, which are objected to, is:

"Section 1314. The Governor * * * shall appoint a state dental board consisting of five persons, each of whom shall be a graduate of a reputable dental college and shall have been in the legal and reputable practice of dentistry in the state at least five years next preceding his appointment."

It is claimed that this section is clearly void for the reason that the law makes it incumbent upon the Governor to select the dental board out of a certain selected class of dentists, to-wit, those dentists who have been in "reputable" practice and who are graduates of a "reputable" dental college.

There is nothing in this particular section that could be construed as class legislation, for the objection goes to the word

"reputable" and to the phrase "reputable practice." The Legislature certainly did not expect the Governor to appoint, with the advice and consent of the Senate, a state dental board consising of graduates of a "disreputable" dental college, and men who had been in the "illegal and disreputable" practice of dentistry. No such question is raised in this proceeding and there is no evidence before the court that the board selected consists of dentists belonging to a particular class. Every dentist is presumed to be requtable unless the contrary is proven, and every practitioner is supposed to be in reputable practice unless the contrary has been shown, and as no one can practice dentistry in the state of Ohio without first having passed the necessary requirements, showing a certain amount of skill, learning and efficiency, there is no distinction made between graduates of dental colleges, nor dental colleges as such.

It is claimed, however, that the words "reputable practice," "reputable dentists," etc., refer only to non-advertising dentists, and that, therefore, such a classification is class legislation of the most flagrant character.

The dental board appointed by the Governor has not placed itself in the position of being attacked upon this ground, or of having refused a certificate to practice dentistry in this state to any dentists on the mere ground that the applicant belongs to the so-called "advertising dentists," and if such a distinction should be made by this board in the matter of granting licenses, an action in mandamus against said board would certainly lie. There is nothing in the provision of the law which makes it compulsory upon the Governor, in selecting a state dental board, to appoint dentists who carry on their profession without advertising. The word "reputable" is not really a limitation; it would seem almost a superfluous term, for the Governor in appointing the state dental board certainly would not appoint disreputable dentists or malpractitioners; for the profession of dentistry, like any other profession, is supposed to consist only of reputable men. The fact that every profession, whether it be law, medicine, theology, or dentistry, has among its members men who do not reach the standard of high moral qualifications demanded today by society, does not presume that these particular practitioners are disreputable or guilty of gross immoral

conduct until they are proven to be such; and in that case their license may be revoked either by the state, or, if the wrongdoer is a theologian, by the church. All dentists are presumed to be reputable; all are presumed to be engaged in a reputable practice, and all dental colleges which have received a charter from the state of Ohio to do business within the confines of our commonwealth are presumed to be reputable colleges, or their charters would or should be annulled.

The fear expressed by learned counsel that the state dental board appointed by the Governor would interpret the term "reputable practitioner" as meaning a non-advertising practitioner, is reading into the statute something which is nowise warranted by its terms, and there is nothing that would warrant this court to assume that in the actual and practical operation of the act the words "reputable practice" will be construed to mean by the Governor, in whom vests the appointing power, a dentist who does not advertise.

The court, therefore, is of the opinion that Section 1314 is not contrary to the spirit of our Constitution and Bill of Rights.

The provisions of Sections 1325, 1329-1 and 12713, which are complained of as objectionable, may be construed together and read as follows:

"Section 1325. The state dental board may revoke * * * a license * * * if the person holding such license shall advertise with a view of deceiving the public or be guilty of any grossly immoral conduct likely to deceive or defraud the public, or which disqualifies the applicant to practice with safety to the people."

"Section 1329-1. * * * Any person or persons practicing or offering to practice dentistry or dental surgery shall do so under his name only."

"Section 12713. * * * Whoever practices dentistry under a false name, or assumes a title, * * * shall be fined, etc."

It is a well established principle of law that the Legislature, under the guise of protecting the public interests, may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.

In what way is public health, safety or public morals promoted in compelling dentists to do business under their own

names, any more than it would be to compel other business or professional men to do likewise?

There is no law on the statute books to prevent lawyers, whose specialty is the collection of accounts, from advertising their business under such names as "The Acme Collection Company," "The Commercial Collection Company," etc., or to prevent druggists from advertising their drug dispensary under such names as "City Drugstore," "Central Drug Company," "Cut Rate Druggists," etc. Thus, among dentists, the public is accustomed to such signs as "New York Dentists," "Painless Dentists," etc. It does not mean that all the dentists operating the New York Dental Parlors come from New York, nor that all the drugs sold in the "Cut Rate Drugstore" are sold at a cost below that of their competitors. The public is in no way harmed by this class of advertisement, and why the law should place such strictures upon the profession of dentistry can not be explained, except that there is a class of dentists who advertise and a class who do not, just as there are druggists who cut their goods below market price, while others sell at the market price. Such a limitation upon the exercise of their rights is an unreasonable and arbitrary restriction upon a legitimate profession, and is a provision of the law which in no way operates to the benefit of the public health, safety or morals, and is certainly an abuse of legislative power.

It is claimed that the state is permitted, in the exercise of its police power, to impose such restrictions and burdens whenever necessary to promote the general welfare, and wherever such a broad exercise of its powers is apparent the courts assert their right to restrain such power, to the extent that private rights may not be arbitrarily or unreasonably infringed and a strict observance of the constitutional limitations upon police power is required.

The court in the case of *Markley* v. *State,* 12 O. C. C. (N.S.), 81, at 84, says:

"There is no easier or more tempting opportunity for the practice of tyranny than in the police control of occupations. Good and bad motives often combine to accomplish this kind of tyranny. The zeal of the reformer, as well as cupidity and self interest, must alike be guarded against. Both are apt to prompt

the employment of means to attain the end desired, which the Constitution prohibits.''

In the case of *State* v. *Gravett*, 65 Ohio St., 289, Judge Shauck, in passing upon the legality of the osteopath law, says on page 308:

''Our constitutions are founded upon individualism and they make prominent the theory that to the individual should be granted all the rights consistent with public safety; and our development is chiefly attributable to the firm establishment and maintenance of those rights by an authorized resort to the courts for their protection against all hostile legislation which is not required by consideration of the public health or safety.''

The present dental statute, the constitutionality of which is being attacked in this proceeding, practically prohibits dentists from advertising, and if they do advertise, subjects them to arrest, fine and possible revocation of their license to practice. It is hard to conceive how public health, safety or morals are protected by such an act, which singles out the profession of dentistry. There is no such law pertaining to druggists, who are licensed by the state after a thorough examination or doctors, or veterinaries. It singles out the dentists as a particular class of culprits should they advertise, while all other profesions which use this method of enlarging their clientelle and advancing their business interests are free from any such restrictions. That this is class legislation pure and simple has been decided time and again by the courts of last resort in the different states.

Such legislation is justified only upon the ground of police power and as tending to promote the public health, morals, safety or general welfare. Laws which impose penalties on persons and interfere with the personal liberty of the citizens can not be constitutionally enacted unless the public health, comfort, safety or welfare demands their enactment. It is for the Legislature to determine when an exigency exists for the exercise of this power, but it is for the courts to decide whether or not this power is properly exercised. The Legislature has no power, under the guise of police regulations, to arbitrarily invade the personal rights and liberty of the individual citizen. When the police power is invoked for the purpose of regulating a useful business,

occupation or profession, and the mode in which that business is carried on or is advertised, the Legislature is not the exclusive judge as to what is a reasonable and just restraint upon the constitutional right of the citizen to pursue his calling and to exercise his own judgment as to the manner of conducting it. The general right of every person to pursue any calling and to do so in his own way, provided he does not encroach upon the rights of others, or trespass upon public morals, can not be taken away from him by legislative enactment.

The claim made in the case at bar is that the dental law, in the features above enumerated, is constitutionally obnoxious, for the reason that it denies the complainant the exercise of property rights without due process of law and the equal protection of laws; that it delegates legislative and judicial power to an executive board known as the State Dental Board, all which is claimed to be contrary to and in violation of the Constitution of the state of Ohio. Of course, the statute must be upheld unless clearly unconstitutional but if it be unconstitutional, then it is unimportant how wise, how necessary or beneficient the law may be, for if any sections thereof are pervaded by any unconstitutional element, those sections, at least, must be declared void.

In the case of *Allgeyer* v. *Louisiana*, 165 U. S., 578, 589, it is stated that the liberty mentioned in the fourteenth amendment embraces the right of the citizen to be free in the enjoyment of all faculties, to be free to use them in all lawful ways, to live and work where he will, to earn his livelihood by any lawful calling, to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned.

Thus, some of the dentists in our state have, in connection with the practice of their profession, used certain trade names other than their own, as, for instance, "New York Dentists," "Albany Dentists," "Sanitary Dentists," etc., and thus by the continued use of these trade names, such names, in the course of time have become valuable, and to the user of these names, in connection with the exercise of the user's skill and knowledge,

have resulted in a large and lucrative business, and these trade names mean as much to the advertising dentist as a trade name means to any other established form of business or profession. To deprive the dentist of the benefit of this trade name by legislation is an arbitrary use of legislative power and a consequent abuse thereof. It works in favor of the non-advertising dentists and to the detriment of the advertising dentists.

That part of Section 1325 which sets out that "No dentist shall advertise with a view of deceiving the public" does not provide any standard by which the dental board may be guided with reference to what advertisements would and what advertisements would not deceive the public, and further what connection has a dentist's view of advertising with the health, safety, comfort and welfare of the public. It would be impossible, in many instances, for any board of men to determine whether a dentist, when he inserted the advertisement, did so with a view of deceiving the public. There is no standard to guide the board.

The court in the case of *Czarra* v. *Board of Medical Supervisors,* 25 App. Cases, District of Columbia, page 444, said:

"Where the Legislature declares an offense in words of no determinate signification, or its language is so general and indefinite that it may embrace not only acts commonly recognized as reprehensible, but also others which it is unreasonable to presume were intended to be made criminal, the statute will be declared void for uncertainty.

" 'Unprofessional or dishonorable conduct' is not defined by the common law, and the words have no common or generally accepted signification; and what conduct may be of either kind is a matter of opinion only.

"The test to determin whether a statute defining an offense is void for uncertainty is whether the language may apply not only to a particular act about which there can be little or no difference of opinion, but equally to other acts about which there may be radical differences, thereby devolving upon the court the exercise of arbitrary power of discriminating between the several classes of acts.

"The right to practice a profession, when regularly obtained by compliance with the law, becomes a valuable privilege or right in the nature of property, and is safeguarded by the principles that apply in the protection of property lawfully acquired, and these are of the same general nature, though not in all particulars, as those which safeguard one prosecuted for the commission of a minor offense."

Thus, when the Legislature of the state of Ohio passed a law giving the State Dental Board power to revoke a license, if the person holding such license "shall advertise with a view of deceiving the public," it is void for uncertainty, it being a matter of opinion whether any given advertisement was done "with a view of deceiving the public." In fact, all of Section 1325 is so uncertain in its provisons and leaves so much to the arbitrary exercise of the powers of the dental board, that the whole section is contrary to the spirit of our Constitution and the provisions of our Bill of Rights.

A question similar to this has been decided in the case of *Hewitt* v. *State Board of Medical Examiners*, 148 Cal., 590. In that case it was held that:

"The provisions of the statute that 'all advertising of the medical business in which grossly improbable statements are made' shall constitute unprofessional conduct, for which the medical examiners may revoke the certificate, without defining what statements shall be deemed 'grossly improbable,' and which leaves it to the whim or caprice of the medical examiners, without any standard for their guidance, is too indefinite and uncertain to be enforced by the revocation of the physician's certificate, and is void."

In the section of the statute under consideration no rule is provided whereby an advertising dentist can tell whether or not the publication he makes will bring him within the ban of the law's provision. If, in the judgment of the board, such statements are made with the view of deceiving the public, then the dentist's right to practice is forfeited. Instead of furnishing some standard by which the dentists may determine in advance what statements the board will treat as being of a character to deceive the public, it leaves that important matter *in nubibus;* yet the law provides that after the dentist has issued the advertisement, an *ex post facto* judgment of the board shall determine whether the dentist's statement is made with the view of deceiving the public, and whether or not the dentist has been guilty of any grossly immoral conduct likely to deceive or defraud the public, or whether the advertisement is of such a nature as to disqualify the applicant to practice with safety to the people. This entire section of the statute is void by reason of its uncertainty.

Section 1329-1 provides that any person practicing or offering to practice dentistry or dental surgery shall do so under his name only.

The argument made in support of this statute is that it protects the general public against unscrupulous malpractitioners, who, under the guise of a high sounding name, perform the delicate operations of dental surgery, and being unskilled in the performance of their duties are a real menace to the community, and the patient is unable to have proper recourse against them as it would be difficult to learn the operating dentist's name.

A provision of the statute requiring that the name of the dentist should appear in readable letters in connection with the "advertising name" might be considered a salutary provision of the statute to protect the public against fraud and imposition. But we are not called upon to decide this particular question in the case at bar as Section 1329-1 contains no such qualification. Section 1329-1 virtually prohibits any dentist from practicing dental surgery under any other name except his own. If this was held to be a proper exercise of police power, all of the "good will" attached to such names as "New York Dental Parlors," "Albany Dentists," etc., would be wiped out; the property rights in these names would be *nil.* and an irreparable loss would be suffered by those who for years have used these names and built up a large and legitimate practice under these designations. What is there to prevent the Legislature of the state of Ohio from passing a law requiring all soap manufacturers to sell their soap under their own names only, so that the purchasing public might know where to look for recourse in case a certain soap should contain ingredients detrimental to the user's health? If our Constitution would permit the enactment of such a law, the most extensive industry for which Cincinnati is noted would be put out of business instanter.

Section 1329-1 is certainly an abuse of the police power of the state, and therefore unconstitutional.

Advertisements by dentists may be regarded by certain members of the dental profession as contrary to professional ethics, but the Legislature and courts are not concerned with this view of the case. The Legislature has no power to confer the authority

upon a board of dental examiners to deny to a dentist the right to advertise his business, and that is what the Legislature virtually has assumed to do when it enacted the aforementioned Sections 1325 and 1329-1.

Section 12713 provides that:

"Whoever being a manager, proprietor * * * of a place for performing dental operations, employs a person who is not a licensed dentist to perform dental operations as defined by law, or permits such person to practice dentistry in his office, or whoever practices dentistry under a false name, or assumes a title, or appends or prefixes to his name, letters which falsely represent him as having a degree from a legal dental college, or makes use of the words 'dental college' or 'school,' or equivalent words, when not lawfully authorized to do so,* * * shall be fined."

The evident purpose of the Legislature, to which exception is taken by counsel for the applicant, seems to be fully expressed, to-wit, that no one shall be permitted to practice the profession of dentistry in the state of Ohio unless he be a licensed dentist and he can not assume the title of "dentist" unless he has such license conferred upon him by the proper authorities of the state. The effect of this statute is also a prohibition against anyone practicing dentistry under a false or assumed name, for instance, a graduate of a dental college, holding a license from the state, and whose name, for example, is John Smith, will not be permitted under this section to advertise himself as William Brown. This does not prohibit John Smith from advertising his dental office as "New York Dental Parlors" or "Albany Dentists."

The court is of the opinion that in that respect Judge Dillon's construction of the law in *Rose* v. *Baxter et al,* 7 N. P. (N.S.), 132, decided May 16, 1908, is sound reasoning. In that case a doctor under the name of Dr. Justin, and at the same time maintained another office under the name of Dr. Rose. In that case the court held that under the circumstances of that case the doctor intended thereby to perpetuate a fraud upon the public, constituting gross immorality.

The same reasoning would apply in case a dentist would attempt to practice dentistry under two different names. The court does not believe that an advertisement by a denist refer-

ring to his place of business as "Philadelphia Painless Dentists," or "New York Dental Parlors" is contrary to the spirit of the section here referred to. It would appear that the Legislature intended that no dentist should practice under a false name; so that, in the case at bar, if the term "Philadelphia Painless Dentists" could be construed as belonging to the category of common names, such as John Smith, Herbert Brown, Robert Watson, etc., and that Dr. Craycroft intended thereby to convey to the public that his name, instead of being Robert C. Craycroft, was "Philadelphia Painless Dentists," the provisions of Section 12713, would apply, but it would be going too far to charge that Dr. Robert C. Craycroft, by advertising his profession under the name of "Philadelphia Painless Dentists" practiced dentistry under a false name. The testimony showed that he had his diploma from the dental college of which he was a graduate, which contained his name—Robert C. Craycroft—hung in his dental offices, did business as Robert C. Craycroft, was known as such in the community, and did not conceal his personal identity in any manner. The fact that he used his well known description "Philadelphia Painless Dentists" is not such a violation of the law as contemplated by the Legislature when Section 12713 was enacted.

The court is of the opinion that if the Legislature would amend this law in such a way as to make it obligatory to place upon these advertisements of the advertising dentists, also the name of the practitioner, much of the objection to this law on part of both of the contending parties would be obviated. By such a provision being inserted in the law, the public would be fully protected and no harm could come to any dentist who has the necessary education, qualification and skill to discharge his duties toward the public and who wishes to be fair and honest with his patients.

In view of the above, the court holds that Section 1314 is constitutional; that Sections 1325 and 1329-1 are unconstitutional; and that Section 12713, under the above interpretation, is not contrary to our Bill of Rights; and that Robert C. Craycroft, being charged with violating Sections 1325 and 1329-1, be released from further custody.