[Civ. No. 2642.   Third Appellate District.—March 12, 1924.]

A. L. GOLDSMITH, Appellant, v. THE BOARD OF EDUCATION OF SACRAMENTO CITY HIGH SCHOOL DISTRICT et al., Respondents.

[1] SCHOOL LAW—ADVOCACY OF ELECTION OF PARTICULAR CANDIDATE—UNPROFESSIONAL CONDUCT—DISMISSAL.—A permanent teacher in a public high school who advocates before his class, while in session and under discipline, the election of a particular candidate for the office of county superintendent of schools is guilty of "unprofessional conduct," within the meaning of subdivision (j) of section 1672 of the Political Code, and, after a fair and impartial public hearing before the board of school trustees, and conviction, is subject to dismissal.

[2] ID. —TEMPORARY DISMISSAL—CONSTRUCTION OF STATUTE.—While subdivision (j) of section 1672 of the Political Code does not in express language state that a teacher found guilty of unprofessional conduct may be suspended or temporarily dismissed, the right of the board of school trustees, in its discretion, to prescribe such lesser punishment, instead of permanently dismissing such teacher, is clearly embraced within the term "dismiss" as used in that section.

[3] ID.—STATUTORY CONSTRUCTION—CARDINAL RULE.—Where the language of a statute is, upon its face, reasonably susceptible of either of two constructions, one which, in its application, will render it reasonable, fair, and just, and harmonious with its manifest purpose, and another which, in its application, would be productive of absurd consequences, the former construction will be adopted.

[4] ID. — CONTRACTUAL RIGHT TO TEACH — RIGHT OF BOARD TO TERMINATE.—The right of a person to teach in the public schools arises out of contract, and, even though there were no statutory provision expressly empowering the board of school trustees to suspend or dismiss a teacher for unprofessional conduct, said board would have the right to terminate the contract of employment or it would be authorized to exercise the right to discipline such teacher or impose a penalty for his violation of his contract which would be less drastic than permanent dismissal.

[5] ID. — UNPROFESSIONAL CONDUCT — DISCRETION OF BOARD — REVIEW BY COURT.—The fact that subdivision (j) of section 1672 of the Political Code does not define the term "unprofessional conduct," but leaves it to the discretion of the board of school trustees to determine what acts shall constitute unprofessional conduct, does not render said section meaningless and void; and where the board acts in good faith and within the limits of the authority given by law, its power is supreme and its order is beyond the jurisdiction of the court to change, criticise, or review.

---

(1) 36 *Cyc.*, p. 1090.    (2) 35 *Cyc.*, p. 1086.    (3) 36 *Cyc.*, pp. 1111, 1116.    (4) 35 *Cyc.*, p. 1086.    (5) 35 *Cyc.*, pp. 1090, 1095.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

Elliott & Atkinson for Appellant.

---

3.    See 25 R. C. L. 1019.
4.    See 24 R. C. L. 618.

C. F. Metteer for Respondents.

HART, J.—On and prior to the eleventh day of September, 1922, the appellant was a teacher in the Sacramento high school. On said date the city superintendent of schools of the city of Sacramento presented to and filed with the city board of education of said city, then consisting of the persons named in the title hereof as defendants and respondents herein, written charges against the appellant as follows:

"That on the 1st day of September, 1922, at the High School before his class, in session and under discipline, he stated and remarked among some other notices as follows:

" 'Many of you know Mr. Golway, what a fine man he is, and that his hopes are to be elected soon. I think he would be more helpful to our department than a lady, and we need more men in our schools.

" 'Sometimes your parents do not know one candidate from another; so they might be glad to be informed; of course, if any of you have relatives or friends, trying for the same office, be sure and vote for them.'

"I charge that said conduct on the part of said A. L. Goldsmith is and was unprofessional in that it is contrary to the law of the State of California."

It should be explained that Golway, mentioned in the charges, was a candidate before the voters for election as superintendent of schools of Sacramento County at the time the alleged objectionable remarks were made by appellant.

On the twenty-second day of September, 1922, said day having previously been fixed for that purpose by said board and the appellant duly notified thereof, the charges were called for hearing and the same were publicly heard and testimony taken thereon, both the city superintendent of schools and the appellant being represented at said hearing by counsel. On the conclusion of the taking of testimony and after the issue was argued by counsel for the respective parties, the board ordered and took a recess for ten minutes for the purpose of going into executive session and therein considering the evidence and a verdict. Within a brief time thereafter, and on the same evening, the board returned a written finding adjudging that the charges preferred against the appellant were sustained by the evidence and

were true. As a conclusion of law from said finding, it was found that the appellant was guilty of "unprofessional conduct as charged in the complaint." The judgment following the finding and conclusion of law was that the said A. L. Goldsmith "be and he is hereby suspended without pay for a period of ten weeks, beginning on the twenty-second day of September, 1922, and ending on the thirtieth day of November, 1922," and that the president of the board of education publicly reprimand said Goldsmith. Upon announcing the finding and conclusion of law and judgment the president of the board reprimanded the appellant.

On the fifth day of October, 1922, the appellant filed this action in the superior court in and for the county of Sacramento, in which he sought and prayed for a writ of mandate to compel the defendants to reinstate him to the use and enjoyment of the right to perform services and duties of teacher in said Sacramento high school, "and for such other and further order as. is proper in the premises," etc. The complaint in said action alleged that plaintiff, after having been regularly employed as a teacher in said high school for a long number of years, was, by said board of education, on said twenty-second day of September, 1922, wrongfully and without right suspended from said position and denied his right to perform and discharge the duties thereof. The return to the writ contained a recital of all the proceedings culminating in the order and judgment of the board of education suspending and depriving the appellant of the right to exercise the duties of teacher of said school.

Upon hearing the matter, the court below rendered judgment denying the writ of mandate and discharging the order to show cause. From this judgment the plaintiff appeals. This cause was appealed to the supreme court, the transcript having been filed in said court in February, 1923, but later that court transferred the same to this court for hearing and decision. Subsequently the defendants noticed a motion in this court for a dismissal of the appeal on the ground that the same involved a moot question for the reason that the period of suspension of the appellant, at the time of taking the appeal, had expired, and for the further reason that, after said period of suspension had terminated, and at the time the appeal was taken, he had resigned his position as teacher in said high school. The motion was denied

by this court for reasons stated in the opinion filed on denying the motion. (See 63 Cal. App. 141 [218 Pac. 296].)

[1] The question first raised by the appellant is as to whether the charges preferred against him and of which he was found guilty by the said board of education are authorized by any law of this state as the grounds for the suspension of a teacher in the public schools. His contention is that there is no warrant in any law of the state relating to the public schools for the filing of such charges against such a teacher. So far as we are advised by the discussion in the briefs, if the proceedings taken against the appellant are to be sustained, it must be upon the authority of either section 1609 (j), as amended by Stats. 1921, p. 1666, or section 1672 of the Political Code. The first-mentioned section contains an enumeration of the powers of boards of school trustees, and subdivision (j) thereof reads as follows: "To dismiss permanent teachers, principals, or supervisors of special subjects, except as hereinafter provided, only for one or more of the following causes, after a fair and impartial public hearing. Causes for dismissal are immoral or unprofessional conduct, incompetence, evident unfitness for teaching, persistent violation of or refusal to obey the school laws of California, or reasonable rules prescribed for the government of public schools."

Section 1672 provides: "No publication of a sectarian, partisan, or denominational character must be used or distributed in any school, or be made a part of any school library; nor must any sectarian or denominational doctrine be taught therein. Any school district, town, or city, the officers of which knowingly allow any schools to be taught in violation of these provisions, forfeits all right to any state or county apportionment of school moneys; and upon satisfactory evidence of such violation, the superintendent of public instruction and school superintendent must withhold both state and county apportionments."

The learned judge by whom this action was tried filed a° written opinion setting forth his reasons for the conclusion at which he arrived, and which conclusion is embraced in the decision of the court. In said opinion it is declared that the charges against the appellant, as framed and filed, do not come within the provisions of the section last hereinabove quoted. In other words, the judge declared

in his opinion that, since the appellant was not specifically charged with issuing or distributing a publication of a partisan character in the school, or teaching therein any sectarian or denominational doctrine, the conduct of the appellant, as indicated by the charges filed against him, does not come within the ban of said section. It was his opinion, however, that the charges were authorized by section 1609, subdivision (j), of the Political Code.

We agree with the judge of the court below that the charges, as they are alleged, do not, strictly speaking, fall within the condemnation of section 1672 of the Political Code, but that if they are sustainable at all under any law of the state, it is upon the authority of subdivision (j) of section 1609. We are not prepared to hold, however, that if any teacher in the public schools should teach or advocate, *ore tenis,* any doctrine of a sectarian, partisan, or denominational character his conduct in that regard would not come within the purview of section 1672. And this view is based upon the principle that the law will not suffer that which is directly prohibited to be done indirectly or by indirection. Nor are we prepared to declare that the oral advocacy by a teacher in a public school before a body of students of the election of a single or a particular candidate for a public office is any the less an act of partisanship, within the meaning of section 1672, than would be like advocacy of the election of all nominees of a particular political party. If such conduct does not come within the spirit, even if not the letter of section 1672, then the very practice which said section specifically condemns may be indulged in by a teacher with impunity. But in view of the character of the charges filed against the appellant, this question does not require further discussion herein.

As stated, we agree with the trial judge that the charges against the appellant are clearly embraced within the contemplation of subdivision (j) of section 1609 as expressed in the general language, "unprofessional conduct." [2] But it will be noted that said subdivision does not in terms provide that a judgment of suspension may be imposed by the school board in the case of the commission by a school teacher of acts constituting "unprofessional conduct." The provision is that for such acts and for all other acts mentioned in the section a teacher may be *dismissed.* This

peculiar phraseology of said subdivision gives handle to the appellant to urge the point (for the first time in this court) that the judgment of suspension is void because it is not within the express words or the intention of the section as evidenced by its language. It may be conceded that, as generally used in connection with legal proceedings in the courts of justice, the word "dismiss" means putting an end to a proceeding, as, for instance, to dismiss a particular action or a motion, etc. It does not always or necessarily mean, though, the final ending or termination of the litigation of the subject matter of the action or of the motion dismissed. We are of the opinion, however, that the word "dismiss," as used in the section in question, could not have been intended by the legislature so to restrict the power of the board as to require it in all cases of guilt under said section to impose as a punishment the permanent dismissal of the offending teacher. It is certainly true that the legislature intended that for any of the offenses enumerated or contemplated by said section there should be some sort of punishment. We will not assume that the legislature, in enacting said section, acted upon the sanguinary theory upon which Draco ordained in his code of criminal laws that all offenses, whether petty or aggravated, should be punished with death, because, as he seemed to conceive, the least deserved it, while there was no greater human punishment which could be inflicted for the more heinous. To hold that the meaning of the word "dismiss," as used in said section, was intended to limit the power of the board to the imposition of no other punishment than that of permanent dismissal in any and all cases arising thereunder, regardless of whether the particular offense charged is of sufficient gravity to warrant such a penalty, would give to the section a construction which, in its application to conceivable cases, would be so unreasonable as that the courts might be justified in declaring it to be void. [3] It is a cardinal rule of statutory construction that where the language of a statute is, upon its face, reasonably susceptible of either of two constructions, one which, in its application, will render it reasonable, fair, and just, and harmonious with its manifest purpose, and another which, in its application, would be productive of absurd consequences, the former construction will be adopted. Giving the word "dismiss" an interpretation in accord with the common understanding of its mean-

ing will impart to the section the force of a sensible enactment and at the same time exonerate the legislature from the charge, otherwise justifiable, of a preposterous intention in passing the section. Colloquially, or as used in common vernacular, the word ''dismiss'' is often used interchangeably with the word ''suspend,'' and it is clear that the interpretation of that word as so used is the only one that may be given it to relieve the section from the imputation of being absurd or of authorizing, when applied in certain cases, unjust and, in truth, nonsensical consequences. Indeed, we think that, if necessary to effectuate what appears to be the clear intent of the legislature as to said section, the established legal maxim, ''the greater contains the less'' (sec. 3536, Civ. Code), should be applied in this instance, and that, therefore, the word ''suspend'' should be held to have been intended by the legislature to be included within the word ''dismiss'' as used in said section. So interpreting, then, the word ''dismiss,'' and as it is believed the legislature intended it should be understood as so used, the section vests in the board the discretion of determining, in any given or particular case, whether the accused teacher should be permanently or only temporarily dismissed.

[4] But there is still another view which may well be taken of the question of the right of the board of trustees of a school district to impose penalties upon teachers for the violation of their duties as such. The board, under the law, has supervisory power over the common schools and also the duty of employing teachers. The right of a person to teach in the public schools arises out of contract. Let us suppose that, notwithstanding the existence of such power in the board of trustees over the schools and teachers, there was no statutory provision expressly empowering such board to dismiss or suspend a teacher for unprofessional or other conduct inconsistent with the exactions of his position. Would it be contended for a moment that the board, for such conduct, would not be empowered to rescind and terminate the contract and so put an end to the teacher's employment as such? No negative reply to this question would, we apprehend, be vouchsafed. If, under such circumstances, the board may terminate the contract, then, for conduct of the teacher while exercising the duties of his position which is inconsistent therewith but which justly would not call for absolute severance of the teacher from

the school, such board would be authorized to exercise the right to discipline such teacher or impose a penalty for his violation of his contract which would be less drastic than permanent dismissal.

The remaining points in the case were satisfactorily discussed and disposed of by the trial judge in a very able opinion in which he stated the reasons impelling him to the conclusion crystallized in the findings and the judgment of the court. We, therefore, approve and adopt the following portions of said opinion as the opinion of this court:

''The accusation stands as a specific allegation that certain things were said by the plaintiff in the presence of his assembled students and while he was acting in the course of his employment as a teacher. The charge then sets forth that the language used under the conditions alleged constituted 'unprofessional conduct.'' In defense the plaintiff does not deny that the language used was improper nor claim that it did not establish a condition of such gravity as would have warranted punishment if there was any valid law under which the charge could have been brought   [5]   But it is claimed that the term 'unprofessional conduct' is so general, so undefined, so vague, that there is no way by which what is meant by it can be determined, that any act might be claimed to constitute it, and that to make it a ground upon which a teacher might be removed would be to make his employment dependent upon the whim and caprice of changing official authority. As a consequence it is claimed that the cause 'unprofessional conduct' as a ground of removal is meaningless and illegal and that no charge can be said to legally come within it, and that the charges here attempted, having no foundation, are void. If this be true it leaves California with a very large number of teachers to whom she has given permanent employment with no power reserved in her Boards of Education or other governing authority to prohibit the grossest misuse of their privileges. If 'unprofessional conduct' as a ground of dismissal is void because it leaves too much to the judgment or discretion of the Board of Education in determining what constitutes it, then 'immoral' conduct, 'incompetence' and 'evident unfit-' ness for teaching' must likewise be held void for the same reason and practically all of the vitally necessary power of the boards will be stripped from them. A decision which

involved such radical consequences should be reluctantly arrived at and reached only for reasons which are unanswerable. The meaning of the term 'unprofessional conduct' as a ground for suspension from certain kinds of professional employment, or for revoking a license for such practice has been on many occasions before the courts of many states and has been variously supported and condemned. Counsel are familiar with cases stating these different views, and it would be of little value for me here to recollect and analyze them. They have been admirably assembled in the recent case of *State* v. *Robinson,* 253 Mo. 271 [161 S. W. 1169]. There the court, after collecting and grouping these decisions, says, 'There is such a great divergence in judicial thought on this subject that, after reading it all we find ourselves groping in a wilderness of confusing precedents.' The court then continues: 'In considering precedents, it is usually safest to keep an eye on the rules of common sense' (253 Mo. 290 [161 S. W. 1174]). This wise rule I will attempt to apply in the discussion which follows.

"A review of the cases collected will disclose that all of them that do not relate to criminal statutes, have to do with the revocation of the licenses of physicians and dental practitioners. Two California cases are cited with those claimed to hold the invalidity of laws providing penalties for 'unprofessional conduct.' *Ex parte McNulty,* 77 Cal. 164 [11 Am. St. Rep. 257, 19 Pac. 237], had to do with a criminal charge growing out of an attempted revocation of a medical license upon a charge of 'unprofessional conduct.' *Hewitt* v. *Board of Medical Examiners,* 148 Cal. 590 [113 Am. St. Rep. 315, 7 Ann. Cas. 750, 3 L. R. A. (N. S.) 896, 84 Pac. 39], was a case in which a physician resisted the cancellation of his license to practice upon a charge of 'unprofessional conduct.' The revocation was sought under a specification of 'unprofessional conduct' which in reality was an extension of the ordinary meaning of that term. The specification constituted in fact the statement of a new group of revocation. The decision did not condemn the general ground but the loose language of the specification under which the charges were brought. The objections to this specification were so obvious that its illegality could not well be denied. It will thus be seen that our California courts have never held that where the term 'unprofessional con-

duct' was stated by the legislature as a ground for the revocation of the license of one practicing a profession under authority of law, that it was void for uncertainty. In *Ex parte McNulty* the judgment on this point was distinctly reserved by one of the concurring Justices, he holding the provision invalid only as a basis of criminal punishment.

"It seems probable, however, that should the sufficiency of the term 'unprofessional conduct' as a ground for the revocation of the license of a physician or dentist be raised in our California courts they would align themselves with the courts of the states which have held it insufficient and therefore invalid. I say this, although our court in a recent decision involving a somewhat indefinite criminal statute say, 'In this connection it may be stated that there has been a tendency to a much more liberal construction of such statutes in the more recent decisions.' (*Ex parte Daniels,* 183 Cal. 646 [21 A. L. R. 1172, 192 Pac. 442].) But would our courts hold invalid such a law in a case involving the employment of a teacher in the public schools? They have never done so, nor so far as I have been able to discover, has any other state in the Union.

"In this state the court sustained a charge alleging 'evident unfitness to teach,' 'insubordination' and 'unprofessional conduct' against a teacher. (*McKenzie* v. *Board of Education,* 1 Cal. App. 406 [82 Pac. 392].) And in Kentucky one of the first states to take a positive position that such a charge as 'unprofessional conduct' was too vague to justify a proceeding against a physician, the court asserted the authority of the school board to remove a teacher for 'incompetence, improper conduct or inattention.' (*Thompson* v. *Gibbs,* 97 Tenn. 489 [34 L. R. A. 548, 37 S. W. 277].) In these cases the point made here was not raised and they are significant only in that it was not raised. As has been stated, if plaintiff is correct here in claiming that the school board has no power to proceed against a teacher for any breach of what the statute designates as 'unprofessional conduct' because the term is too general, and leaves too much to the discretion and judgment of the board, then other statutory grounds of removal are equally invalid, and the school boards of this state are almost totally without authority over the teachers they employ. This is not only so of California, but is equally true of every other

state in the Union so far as a thorough search has enabled me to discover. The statutes of the several states provide for removal of teachers or the revocation of their certificates generally for such causes as 'general neglect of the business of the school,' 'general neglect,' 'lack of patriotism or refinement,' that the teacher lacked the qualities of success, that the teacher has 'become unworthy'; for 'other demoralizing vice,' 'neglect of duty,' 'wilful neglect of duty,' or 'when he has become unworthy to remain a teacher.'

"Further specification is unnecessary; all of the states seem to provide grounds of removal or dismissal in the broadest terms, leaving to the board or superintendent to determine what acts come within these general provisions.

"Whatever may be said about physicians, dentists and other similar statutes, in the case of teachers, this seems to be the only course that could be pursued. It is not as was denied in *State* v. *Robinson*, 253 Mo. 271 [161 S. W. 1174], with reference to physicians that teachers are more willing to commit offenses than men of other callings and that in consequence it would be impossible to be specific in their enumeration. It is that the calling is so intimate, its duties so delicate, the things in which a teacher might prove unworthy or would fail are so numerous that they are incapable of enumeration in any legislative enactment. The intimate personal life and habits of a physician or dentist do not necessarily affect his usefulness; he deals with adult persons or children under his protection. But the teacher is entrusted with the custody of children and their high preparation for useful life. His habits, his speech, his good name, his cleanliness, the wisdom and propriety of his unofficial utterances, his associations, all are involved. His ability to inspire children and to govern them, his power as a teacher, and the character for which he stands are matters of major concern in a teacher's selection and retention. How can all of these things be provided for and offenses against them be particularly specified in a single statute? The delicacy of the questions involved in a teacher's employment is illustrated by a Missouri case where it is said, 'There may be causes for the removal of a teacher affecting the discipline of the school over which he presides, entirely outside of any question of his learning, ability, power of enforcing discipline, or moral qualities, and outside of his own acts.' (*McLellan* v. *Board,*

*etc.,* 15 Mo. App. 365.)   And the court there permitted the removal of a teacher upon the ground that his wife had charged him with flagrant infidelity, and the fact that the charges had become notorious.   How could such a condition as this be anticipated or provided for?   The inexpediency, not to say impossibility, of attempting to so specify them is illustrated by the law relating to the power of a teacher to suspend or expel a pupil from his school.   In discussing this question a learned author reviews the general obligations of the student and then states: 'These obligations are inherent in any proper school system, and constitute, so to speak, the common law of the school.   Every pupil is presumed to know this law, and is subject to it, whether it has or has not been re-enacted by the district board in the form of written rules and regulations.   Indeed, it would seem impossible to frame rules which would cover all cases of insubordination and all acts of vicious tendency which the teacher is liable to encounter daily and hourly.'   (Voorhees, The Law of Public Schools, sec. 71, p. 175.)   This language applies with peculiar appropriateness to a teacher as well as to his pupils.   His duties to them and to the public are coextensive with their obligations to the school.   To enumerate them in one case would be as 'impossible' as in the other.   To restate them would be equally unnecessary as the professional proprieties of a teacher's employment has likewise become the 'common law of the school.'   The board of education is responsible for the proper conduct of our schools.   They administer them through the teachers they employ.   To enable them to discharge this obligation they must have such power over their teachers as is necessary to promote the efficiency of the schools and to prevent or to punish offenses against it.   In occupations involving a high degree of personal, as distinguished from mechanical or technical service, specification of acts of unfitness are wholly impossible and have never been attempted.   They 'have never dared to do so,' as was stated by counsel for plaintiff in quoting a prominent educator of the state.

"In the case of attorneys they may be disbarred for 'any act involving moral turpitude.'   (Sec. 287, Code Civ. Proc.)   In the army a commission can be revoked for 'conduct unbecoming an officer and a gentleman.'   (Articles of War, subd. 95.)   In the church, where the highest degree of per-

sonal propriety is demanded governing bodies are almost unrestricted in their discretionary power to deal with offenses against a discipline that is itself unwritten.

''I have considered the right to dismiss a teacher as interchangeable with the power to revoke his certificate. But the cases are different. This case is not one where a board or commission has sought to revoke the license of a physician, dentist, optician or pharmacist. No effort is being made here to revoke the certificate of the plaintiff or to prohibit him from continuing the employment of teaching a public school. For this reason the cases such as *Hewitt* v. *Board of Medical Examiners*, 148 Cal. 590 [113 Am. St. Rep. 315, 7 Ann. Cas. 750, 3 L. R. A. (N. S.) 896, 84 Pac. 39], and *Matthews* v. *Murphy*, 23 Ky. Law Rep. 750 [54 L. R. A. 415, 63 S. W. 785], relied upon by plaintiff, have no application. Section 1609 of the Political Code, under which the defendants acted in this case, has no relation to the revocation of a teacher's certificate; it provides only for his dismissal, or suspension, from some one particular employment, leaving his right to seek similar employment elsewhere unimpaired. With all of the protection which the law surrounds the right of a physician or dentist to prosecute his profession and to earn his living by it, nowhere is the right of those who employ them to dismiss them anywhere restricted. Anyone who employs anyone else in such callings can dismiss them or employ others in their stead, at will, for any reason or for no reason. Ordinarily it would be so with Boards employing teachers. The legislature could provide that they might be dismissed 'at the pleasure of the board.' (Voorhees, The Law of Public Schools, sec. 69, p. 160.) But with us our legislature has wisely seen fit to deny to the employing board the power of unrestricted control. In the cases of dentists and physicians they may now be employed by the governing bodies of our prisons, reformatories and hospitals, and unless they are protected by some civil service regulation, they may be discharged at will notwithstanding the doctrine of the cases invoked by counsel for plaintiff. The cases would be parallel if the employment of such physicians and dentists were protected by civil service restrictions as our teachers are by the limitations of Sec. 1609 of the Political Code. It cannot be questioned but that the civil service protection would be

only such as the legislature specified. It could provide for the dismissal of these physicians and dentists, upon 'charges filed,' without specification, 'for good cause shown,' for 'inefficiency,' for 'inattention to duties,' or countless other general grounds.

"Cannot the legislature likewise provide for the dismissal of a teacher, from a particular employment, for such actions as in the sound discretion of the Board of Education amounts to 'unprofessional conduct'? It would seem clear that it could. In both cases the dismissal has been only from a particular employment, leaving the person dismissed free to prosecute his professional employment elsewhere. There is an undeniable difference between the qualification of a man for the general practice of a profession and his fitness for some particular employment. Transient and local causes may render him undesirable in the latter case although his general fitness might be conceded. There is a vast difference between the right of a board to take away a man's right to practice a profession by revoking his license and subjecting him to dismissal from a single employment after he has become subject to a substantial objection of his employer. This difference the legislature has recognized in Sec. 1609 by permitting an employing board to dismiss a teacher without giving it the power to revoke his certificate or prevent or interfere with his employment elsewhere. Whatever may be said as to the too general language of the grounds of revocation of certificate as contained in Secs. 1515a and 1771 of the Political Code, the sufficiency of Sec. 1609 seems beyond question.

"I have been discussing this question upon the assumption that the position of a teacher was of the same general character as that of a physician or dentist or optician, differing only in the delicacy of the trust, in its more personal nature, and in the countless number of particulars in which its duties and proprieties might be offended against. But the cases are wholly different and this difference accounts for the general terms used in stating the grounds upon which a teacher may be removed, and why these statutes have been so universally administered without challenge.

"The right to work in the treatment of diseases, the care of teeth, the manufacture of optical instruments and similar tasks is a natural and inherent one. Subject to a limited

police power in the state, the right to labor at these occupations can no more be taken away from a man than can his right to work at hoeing corn or laying brick. But because of the nature of these callings, in the exercise of such police power, and for the protection of the public health and safety, the legislature may prescribe the qualifications of those who are to be permitted to practice them, 'and may commit to a board created by it the authority to ascertain whether an applicant for permission to practice possesses the necessary qualifications; and also the power, after notice and opportunity to be heard, to revoke the license of any who become disqualified either morally or intellectually.' (*Aiton* v. *Board of Medical Examiners,* 13 Ariz. 354 [L. R. A. 1915A, 691, 114 Pac. 962]; *State* v. *Robinson,* 253 Mo. 271 [161 S. W. 1169]; *Green* v. *Blanchard,* 138 Ark. 137 [5 A. L. R. 84, 211 S. W. 375]; 8 Cyc. 876, 877.) And the charges made as a basis of removal must involve acts bringing the case within the purview of such police power. (*Hewitt* v. *Board of Medical Examiners,* 148 Cal. 590 [113 Am. St. Rep. 315, 7 Ann. Cas. 750, 3 L. R. A. (N. S.) 896, 84 Pac. 39].) The practitioner's natural right to labor can only be taken away or circumscribed when the public health and safety demand it, and only for reasons involving these considerations. But with a school teacher the case is entirely different. No one has a natural or inherent right to teach a public school. . . . And the legislatures of our state and the other states in the Union have seen fit for reasons of public policy to make the right to teach in any particular school subject to a broad discretion in the school authorities to dismiss for causes which come within very general designations. I believe these statutes are valid; I believe that the term 'unprofessional conduct' is sufficiently specific as a basis of action leading to the dismissal of a teacher. . . . If the Board of Education should take advantage of these general provisions, if it attempts frivolous charges, or acts arbitrarily or capriciously upon substantial ones, the courts will protect the teacher whose rights have been invaded. But in this case the Board of Education seems to have acted in good faith and within the limits of the authority given them by law.

"Within these bounds their power is supreme, and their order in this case is therefore beyond the jurisdiction of this court to change, criticise or review."

Lastly, noticing the assertion of counsel for the appellant in their briefs that the conduct of the latter involved "minor matters," it is to be observed that the advocacy before the scholars of a public school by a teacher of the election of a particular candidate for a public office—the attempt thus to influence support of such candidate by the pupils and through them by their parents—introduces into the school questions wholly foreign to its purposes and objects; that such conduct can have no other effect than to stir up strife among the students over a contest for a political office, and the result of this would inevitably be to disrupt the required discipline of a public school. Such conduct certainly is in contravention not only of the spirit of the laws governing the public school system, but of that essential policy according to which the public school system should be maintained in order that it may subserve in the highest degree its purposes.

For the reasons above stated the judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.