[Civ. No. 2407. Second Appellate District.—March 8, 1918.]

## R. S. LANTERMAN, Appellant, v. HARRY E. ANDERSON et al., Respondents.

WRIT OF REVIEW—OFFICE OF.—The office of the writ of *certiorari* is to determine only as to whether an inferior board or court has acted in excess of jurisdiction, and the investigation of the trial court will go no further than to inspect the record as it appears written and to determine from that whether there has been action taken unwarranted by the powers given to the board or court whose proceedings are under review.

ID.—RECORD NOT SUBJECT TO MODIFICATION.—The writ of *certiorari* may not be used to take the place of an appeal or to add to or modify a record with respect to any jurisdictional fact determined therein.

ID.—ORDER REVOKING LICENSE TO PRACTICE MEDICINE—PRESENCE OF
QUORUM OF BOARD—RECORD NOT SUBJECT TO CONTRADICTION.—On
*certiorari* proceedings to review an order of the board of medical
examiners revoking the license of the petitioner to practice medicine
and surgery, where the record recited that a quorum of the board
was present at the hearing of the charges, it was not error to refuse
to take testimony as to whether a member of the board had absented
himself during the taking of the evidence.

STATE MEDICAL LAW—REVOCATION OF LICENSE FOR UNPROFESSIONAL CON-
DUCT—POWERS OF BOARD—CONSTITUTIONALITY OF PROVISION.—The
provision of the State Medical Act (Stats. 1915, p. 184), that the
board of medical examiners may revoke or suspend the license of a
physician for unprofessional conduct, is not unconstitutional, as con-
ferring powers which belong strictly, under the constitution, to the
judicial department.

ID.—PLEADING—SUFFICIENCY OF COMPLAINT.—A complaint filed before
the state board of medical examiners charging a physician, in the
language of the act, with committing a criminal abortion, is suffi-
cient, without stating the acts defined in the Penal Code, as con-
stituting such crime, since the language of the statute is sufficiently
explicit to advise a person charged thereunder of the particular kind
of unprofessional conduct which it is proposed to prove against him.

ID.—EVIDENCE—CONVICTION UPON UNCORROBORATED TESTIMONY OF AC-
COMPLICE.—A proceeding to revoke the license of a physician for
unprofessional conduct is not criminal in its nature, and the rule that
a person may not be convicted upon the uncorroborated testimony
of an accomplice has no application.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   Grant Jackson, Judge.

The facts are stated in the opinion of the court.

W. H. Dehm, Frank Dominguez, and W. J. Ford, for
Appellant.

John W. Hart, for Respondents.

JAMES, J.—This is an appeal from the judgment of the
superior court rendered upon hearing of a writ of review and
which judgment affirmed the proceedings and determination
of the board of medical examiners of the state, under and by
which the certificate and license authorizing petitioner to
practice medicine and surgery was revoked.

In the court below, by his petition, appellant set up a very complete record of the evidence and proceedings had before the respondent board. Respondents, not questioning the correctness of the record as there pleaded, objected to the legal sufficiency of the facts shown. The board further filed in the superior court affidavits to meet one allegation made in the petition of appellant. By that allegation it was asserted by petitioner to be the fact that one of the members of the board absented himself during the hearing, and that therefore no quorum was present at all times while the evidence was being taken. The charge made and upon which the order revoking the license and certificate of petitioner was based was that petitioner had been guilty of unprofessional conduct as defined by the State Medical Act. (Stats. 1915, p. 184; Deering's Gen. Laws, 1915, p. 877.) In section 12 of that act it is provided that the certificate of a physician may be revoked or suspended. It is first required that there shall be filed with the secretary of the board a sworn complaint charging the holder of the certificate with "having been guilty of unprofessional conduct." It is then provided that the secretary shall issue a citation requiring the certificate holder to appear at the next session of the board of medical examiners, which shall occur at least thirty days after the filing of the complaint. It is further provided that after issue has been joined by answer, the board shall proceed to determine the matter and may hear such "proper" evidence as may be, adduced before it. In the same section the things which shall constitute unprofessional conduct authorizing suspension or revocation of the certificate are specifically set forth. Appellant was charged under the first subdivision, which reads as follows: "The procuring or aiding or abetting or attempting or agreeing or offering to procure a criminal abortion." The complaint made, in its charging part, was as follows: "That on or about June 19, 1916, the said R. S. Lanterman did, in the county of Los Angeles, state of California, procure, aid and abet, and attempt, agree and offer to procure a criminal abortion upon a pregnant woman, to wit, Elizabeth Johnson."

The first point made by appellant is that the trial court erred in refusing to take testimony upon the alleged issue as to whether one member of the board had absented himself during the taking of evidence. As before noted, the record

of the proceedings had and testimony taken was made a part of the petition of the petitioner, and as. to the correctness of that record or its completeness respondents made no issue. The office of the writ of *certiorari* is to determine only as to whether the inferior board or court has acted in excess of jurisdiction, and the investigation of the trial court will go no further than to inspect the record as it appears written, and to determine from that whether there has been action taken unwarranted by the powers given to the board or court whose proceedings are under review. The writ may not be used to take the place of an appeal or to add to or modify a record with respect to any jurisdictional fact determined therein. (*In re Grove Street,* 61 Cal. 453; *De Pedrorena* v. *Superior Court,* 80 Cal. 144, [22 Pac. 71].) Petitioner in no case is permitted to contradict the record as to the jurisdictional facts shown thereby. Examining the petition filed herein, we note at once that the exhibit attached to the petition purports to be an exact record of the proceedings had at the hearing of the charge made against petitioner before the medical board. That record contains this recital: "At the hour of 11 A. M. of the above day, there being a quorum of the board present, the following proceedings were had." Nowhere in that record—and the whole thereof is given as from a reporter's transcript—is it shown that any member of the board absented himself during the hearing of the charge. The assertion made by the record is that a quorum of the members was present, and we cannot presume in the face of that recital that any other condition existed throughout the hearing. There was a recital that an adjournment was taken at one point until 4 P. M. and at 4 P. M. continued until 8 P. M. of October 5, 1916, and the opening paragraph of the record made shows that at the convening of the evening session a quorum of the board was again present. The allegation in the petition charging that a quorum was not present at some time during the hearing is directly in conflict with the record, and the record must prevail. Therefore, upon the face of appellant's petition, the trial judge was compelled to hold that no issue was tendered as to that matter which required the taking of evidence.

The point is suggested, too, that the act under which petitioner was prosecuted is unconstitutional. The particular

ground of this objection is that powers are conferred which belong strictly under the constitution to the judicial department. Acts of the nature here under consideration have been repeatedly sustained as a proper exercise of the legislative grant. Various boards performing legislative and ministerial functions have the incidental and necessary power, sometimes referred to as *quasi* judicial, to determine facts and enter their judgment thereon; such as boards of supervisors, boards of equalization, boards of police commissioners, and many others unnecessary to name. Referring specially to medical acts, it is said in *Hewitt* v. *Board of Medical Examiners,* 148 Cal. 590, [113 Am. St. Rep. 315, 7 Ann. Cas. 750, 3 L. R. A. (N. S.) 896, 84 Pac. 39] : "Legislation of the character embraced within the general scope of the act in question, in so far as it provides for the revocation of the certificate of a physician, is sustained upon the ground that the legislature has authority under its general police power to provide all reasonable regulations that may be necessary affecting the public health, safety, or morals, and with this object in view to provide for the dismissal from the medical profession of all persons whose principles, practices, and character render them unfit to remain in it. As the duty of determining whether such professional or moral unfitness exists must necessarily be vested in somebody other than the legislature, it is usually committed by appropriate legislation to boards composed of men learned in their profession." (See, also, *Ex parte McNulty,* 77 Cal. 164, [11 Am. St. Rep. 257, 19 Pac. 237] ; *Ex parte Whitley,* 144 Cal. 167, [1 Ann. Cas. 13, 77 Pac. 879] ; *Meffert* v. *State Board of Medical Registration,* 66 Kan. 710, [1 L. R. A. (N. S.) 811, 72 Pac. 247].)

The principal contention made, however, is that the complaint filed before the board of medical examiners was insufficient in its statement of facts to sustain the determination based thereon. The charge, as we have already quoted it, was phrased exactly in the language of that portion of the act defining the particular unprofessional conduct of which it was charged petitioner had been guilty. Counsel for appellant argue that because the statute refers to a "criminal abortion," and that because in order to determine what a criminal abortion is, one must look to the Penal Code, the charge would be insufficiently laid unless the acts defined

in the Penal Code as constituting the crime of abortion are set forth. Appellant was not charged with a crime, nor was he subject, upon the adverse determination made, to any penalty except the revocation of his license to practice medicine and surgery. The contention of counsel would be entitled to more serious consideration were we considering here a criminal offense with its attendant penalties, as the same is understood under any of the penal laws of the state. Where an indictment or information is drawn under the Penal Code, it must, of course, comply with the provisions of section 950 of that code, in that it must contain "a statement of the acts constituting the offense, in ordinary and concise language, . . . " No similar provision appears in the medical act. It must be said, we think, that the language of the statute is sufficiently explicit to advise a person charged thereunder of the particular kind of unprofessional conduct which it is proposed to prove against him; and that, we think, is all that need be said upon the question. The case cited by appellant, where the supreme court of Oregon held a complaint before the medical board to be insufficient because not alleging sufficient facts (*Board of Medical Examiners* v. *Eisen,* 61 Or. 492, [123 Pac. 52]), presents a case under a law different from that before us. In the decision it is recited that "before a license can be revoked by said board for unprofessional or dishonorable conduct under the provisions of this act, a complaint of some person under oath must be filed in the office of the secretary of said board charging the acts of unprofessional or dishonorable conduct and facts complained of against the licentiate accused, in ordinary and concise language." That provision which finds place in the Oregon law is practically identical with the provision of section 950 of our Penal Code, but, as has been just stated, is entirely absent from our medical act. It has been held that an accusation made under Penal Code, section 772, having as its object the removal of a public officer, is not required to conform to the provisions of section 950 et seq. of the Penal Code. (*Woods* v. *Varnum,* 85 Cal. 639, [24 Pac. 843].)

The last contention which we shall notice is that there was no legal or sufficient evidence authorizing the medical board to make the order complained of. The force of this objection rests chiefly upon the assertion that all the material testi-

mony furnished against the appellant was that given by
accomplices. The action not being criminal in its nature, it
is again apparent that the statutory mandate that a person
may not be convicted upon the uncorroborated testimony of
an accomplice has no application here. We feel satisfied that
any witness whose testimony as to competent facts was con-
vincing to the board engaged in the hearing of the charge
would be legally sufficient. It is said in *Tinn* v. *United
States District Attorney,* 148 Cal. 774, [113 Am. St. Rep.
354, 84 Pac. 152], that *certiorari* will not review a decision
rendered upon "insufficient evidence" or through irregular
method of procedure not going to the question of jurisdic-
tion. The statement in the opinion to that effect is no doubt
subject to the qualification that an entire want of evidence
may present a case showing a lack of power to render a judg-
ment or make a finding. We have expressed the conclusion,
however, that the testimony of persons who might be accom-
plices could be received and might be considered by the board
trying the charge. There was ample testimony coming from
the persons concerned in the commission of the act charged
to sustain the determination made by the medical board.
That the facts here may be made more fully to appear, we
will briefly state in an abstract way the substance of the tes-
timony: A young drug clerk had engaged in illicit inter-
course with a girl of about eighteen years. He testified that
when he concluded, by reason of the cessation of the men-
strual act, that she had become pregnant, he gave her certain
drugs to take, which did not produce the desired effect. He
testified that he then took her to petitioner's office and that
a young woman named Smith accompanied them. Miss
Smith remained in the anteroom while a conversation was had
with petitioner; that he told petitioner that the young woman
was in trouble, and wanted to know whether he could get
her out of it; that petitioner responded that the young
woman would have to be given an anesthetic and be curetted;
that she would be in a hospital twenty-four hours and the
service would cost $55; that no examination was made of the
young woman, but that petitioner gave her a card with the
address of a Mrs. Purcell upon it, and told the young man
to take the young woman out there. The girl testified that
she went to the place and presented the card and was ad-
mitted; that in the afternoon petitioner arrived and she was

taken down and placed upon a table and given an anesthetic and operated upon. The young man in question testified that he carried the girl back to her room from the operating-table. The operation was admitted to have been made in the place of Mrs. Purcell, and it was shown that a sister of Mrs. Purcell administered the anesthetic. The appellant and Mrs. Purcell and her sister all testified that no abortion was performed, but that the girl came to the house suffering from an excessive flow and that Dr. Lanterman operated upon her for that trouble. Another physician testified that he made an examination of the girl some weeks after the operation had been made and found a condition showing that there had been a dilation of the sexual organs. The petitioner further admitted that the girl had appeared at his office, but denied that he had agreed to perform any abortion upon her, stating that he had advised that the pregnancy be allowed to run its full period. In the face of this evidence, it cannot be said that the findings made by the medical board are wholly wanting in proof to sustain them.

The judgment appealed from is affirmed.

Conrey, P. J., and Works, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 7, 1918.