[Civ. No. 7682. Second Appellate District, Division One.—November 6, 1933.]

FRANCIS JAMES BOLD, Appellant, v. BOARD OF MEDICAL EXAMINERS OF THE STATE OF CALIFORNIA, Respondent.

William T. Kendrick, Sr., William T. Kendrick, Jr., and Caryl Warner for Appellant.

Otto J. Emme and Bayard R. Rountree, for Respondent.

DESMOND, J., *pro tem.*—This appeal is taken from a judgment of the Superior Court of Los Angeles County, by which under *certiorari* proceedings an order of the Board of Medical Examiners of the State of California revoking the license of appellant to practice medicine and surgery in this state was affirmed.

The appellant had been the holder of a "physician and surgeon certificate", authorizing him to practice his profession, issued by the Board of Medical Examiners under the provisions of the "Practice of Medicine Act of 1913". (See Stats. 1913, p. 722, as amended; Deering's Gen. Laws, 1931 ed., Act 4807.) Section 14 of that act provides that "Whenever any holder of a certificate herein provided for is guilty of unprofessional conduct, as the same is defined in this act, and the said unprofessional conduct has been brought to the attention of the board granting said certificate, in the manner hereinafter provided . . . it shall be the duty of the board and the board shall have power to suspend the right of the holder of said certificate to practice for a period not exceeding one year or to place the holder of said certificate upon probation or suspend judgment in such cases or revoke his certificate, or take such other action in relation to the punishment of the holder of said certificate as in its discretion it may deem proper. . . . No such suspension or revocation shall be made unless such holder is cited to appear" before the board on the filing of a sworn complaint charging the holder of the certificate with having been guilty of unprofessional conduct. Among the items of "unprofessional conduct" specified in section 14 we find the following: "First. The procuring, or aiding or abetting or attempting or agreeing or offering to procure a criminal abortion. . . . Fifth. Conviction of any offense involving moral turpitude in which case the record of such conviction shall be conclusive evidence."

The complaint filed with the board charged that since the issuance to appellant of its certificate of license to practice he had been guilty of unprofessional conduct as defined under the first subdivision of section 14 of the act of 1913, as amended, and more particularly that on or about September 10, 1929, appellant "did, in the county of Los Angeles, State of California, procure, aid and abet, and attempt, agree and offer to procure a criminal abortion upon a pregnant woman" naming her. Issue was joined upon the answer filed by appellant, denying generally and specifically all charges of unprofessional conduct set out in the complaint.

As a further, separate and distinct defense appellant alleged "that he has once been put in jeopardy by reason of the said charge contained in plaintiff's complaint, and

duly acquitted of the said charge. That on or about the 25th day of November, 1929, the said Superior Court duly made and gave its judgment acquitting the said Bold of the charge set forth in plaintiff's complaint; that is to say, the charge set forth in plaintiff's complaint was included in the charge in the said action last mentioned, and a verdict of not guilty was rendered thereon''.

As a further defense appellant alleged that the board had ''no jurisdiction of the matters and things alleged in plaintiff's said complaint by reason of the fact that the said petition is not verified by anyone competent to verify same''.

At the close of a hearing before the board upon the matters charged against appellant, at which various witnesses, including appellant, testified, the following motion was carried by the affirmative vote of all nine members of the board present at the hearing, namely, ''that we, the Board of Medical Examiners of the State of California, do find that the evidence adduced in the matter of the application for the revocation of the license of Francis James Bold to practice medicine and surgery in the State of California be deemed sufficient to sustain the allegations of the complaint filed with this Board on December 11, 1929, and that he be adjudged guilty as charged therein''. The president of the board then announced ''Francis James Bold is found guilty as charged.'' Immediately thereafter by the affirmative vote of the nine members present the license theretofore issued to appellant to practice as a physician and surgeon in the state of California was ordered revoked and written notice of the revocation was served by the secretary-treasurer of the board on the appellant then personally present at the hearing.

The grounds of appeal from the decision of the superior court on the *certiorari* proceedings are three—first, that the Board of Medical Examiners lacked jurisdiction to revoke the license because of its refusal to admit ''proper evidence'' adduced before the board in support of his plea of a former acquittal of the charges contained in the complaint; second, that the complaint was not a ''sworn complaint'', and the man who signed it had, on his own testimony, no knowledge of the matters therein mentioned; third, that the court had no jurisdiction to revoke the license because of a lack of evidence to support the allegations of the complaint that

appellant procured, aided or abetted, or attempted or agreed or offered to procure a criminal abortion upon a pregnant woman, therein named.

■ As to the first ground, we note that section 14 above referred to provides that the board "shall hear such proper evidence as may be adduced before it", and we immediately inquire whether the board was justified in sustaining the objection made to the proposed introduction of evidence that appellant, on being tried for the murder of the woman involved, was acquitted by a jury, the respondent board admitting that the murder charge was based on the theory that deceased came to her death by reason of an abortion performed by the appellant. The objection was that such evidence would be incompetent, irrelevant and immaterial. Counsel for appellant argues that the question of his client's guilt was determined in his favor, once and for all, in the criminal proceeding and is *res judicata* so far as the board's inquiry is concerned, therefore that the board should have admitted the record of acquittal and, applying the rule contended for, would have found itself without jurisdiction to proceed.

He places his chief reliance upon the case of *Coffey* v. *United States*, 116 U. S. 436 [6 Sup. Ct. 437, 29 L. Ed. 684], where, after Coffey had been acquitted upon the criminal charge of defrauding the United States in relation to revenue taxes upon distilled liquors, the government undertook, in a civil action *in rem*, to confiscate certain apparatus and liquors, property of Coffey which had been seized as subject to forfeiture. "The question, therefore," says the court, "is distinctly presented, whether such judgment of acquittal is a bar to this suit. We are of opinion that it is." Examining the case we find that the information contained three counts, founded on as many separate sections of Revised Statutes, variously charging tax frauds in connection with manufacturing, concealing and possession of commodities subject to tax. One of the sections, No. 3257, is typical: "Whenever any person engaged in carrying on the business of a distiller defrauds or attempts to defraud the United States of the tax on the spirits distilled by him, or any part thereof, he shall forfeit the distillery and distilling apparatus used by him, and all distilled spirits . . . found in the distillery and on the distillery premises, and

shall be fined not less than $500 nor more than $5,000 and be imprisoned not less than six months nor more than three years.''

It will be noted that this criminal statute provides triple punishment, or perhaps we should say, punishments of three different kinds for the one offense; confiscation, fine and imprisonment. A man found guilty upon such a charge must respond in all three ways; there is no alternative and each is distinctly and, of itself, a punishment. This is no less true because one of the punishments, confiscation, must be imposed through the bringing of an auxiliary civil suit to condemn the personal property for the public treasury.

We see no similarity between a prosecution under such a statute with its varied means, criminal and civil, of exacting compound punishment, and a trial for murder under our statute, which provides solely a penitentiary or death sentence as punishment. If the appellant in this case had been found guilty of murder by a jury, such a finding would not have worked a revocation of his license, for there is no provision in our statutes as there is elsewhere (see *State* v. *Lewis*, 164 Wis. 363 [159 N. W. 746]) for such action on the part of the court when a practitioner is convicted of a crime committed in the course of his professional conduct. Before appellant here could have been deprived of his right to practice, even after a verdict of guilty rendered in a criminal court, it would have been necessary for the Board of Medical Examiners to file a complaint and, unless default were entered upon failure to answer, to proceed to hear and decide the matter, as they did on abortion charges, or under subdivision five of section 14, which we have quoted above: conviction of an offense involving moral turpitude.

We think it is clear, from the foregoing, as well as for other reasons, that proceedings before the Board of Medical Examiners, instead of being criminal in character, are designed, rather, to protect the public by eliminating from the ranks of practitioners those who are found by members of their own profession to be dishonest, immoral or disreputable. As was said in the *Matter of Newell Smith*, 10 Wend. (N. Y.) 449, quoted by the learned trial judge, in his memorandum decision upon the writ of *certiorari:* ''The trial and acquittal of the defendant upon the indictment for producing the abortion was no bar to this proceeding; they

are entirely distinct and independent proceedings, having different objects and results in view; the one having regard to the general welfare and criminal justice of the state; the other simply and exclusively to the respectability and character of the medical profession, and the consequences connected with or necessarily flowing from it. It is immaterial, therefore, in my judgment, whether the offense mentioned in the charge was indictable or not, and whether the indictment was disposed of upon its merits, or upon some matter of form.'' (See, also, *State* v. *Lewis, supra; In re Barach,* 279 Pa. 89 [123 Atl. 727]; *Lanterman* v. *Anderson,* 36 Cal. App. 472, 478 [172 Pac. 625]; *In re Vaughan,* 189 Cal. 491, 496 [209 Pac. 353, 24 A. L. R. 858].)

It may be said, also, that our review earlier in this opinion of the proceedings and methods employed by the board in reaching its conclusions was intentionally somewhat detailed for the purpose of showing that they were not carried out as a criminal investigation would have been, the rules of evidence and pleading established for criminal trials not obtaining in proceedings of this sort. (*Suckow* v. *Alderson,* 182 Cal. 247 [187 Pac. 965]; *Lanterman* v. *Anderson, supra.*) Since the proceedings before the board did not constitute a second criminal trial for the same offense it is our opinion that a plea of former jeopardy could not have been interposed and that the rule of *res judicata* did not apply; therefore the proposed offer to show an acquittal on the criminal charge of murder based upon the claimed abortion was properly rejected.

██ This brings us to the second contention set up as a ground of appeal; namely, that the hearing did not proceed upon a sworn complaint. The record does not sustain this contention, for we find attached to the complaint the following affidavit made by an investigator of the Board of Medical Examiners under oath before a notary public whose name and seal are affixed thereto: ''State of California, County of Los Angeles—ss. Albert Carter, being first duly sworn, deposes and says: That he is the complainant in the above entitled matter and that he has read the foregoing complaint and knows the contents thereof; that the same is true of his own knowledge, except as to matters which are therein stated on his information and belief, and as to

those matters that he believes it to be true. Signed, Albert Carter.''

Referring to the complaint we note that none of the allegations therein contained are made upon information and belief. However, Albert Carter testified under cross-examination that he had no personal acquaintance with appellant or with deceased and was not a witness to any of the facts in connection with the charge against appellant, and that of his own knowledge he knew nothing about it. On direct examination this witness testified as follows: ''Q. I will ask you to refer particularly to paragraph 3 of said complaint, and ask you whether or not the allegations therein contained are based upon information given to you by a person or persons while you were acting in the representative capacity which you have stated as investigator for the Board of Medical Examiners of the State of California? A. Based on information and belief *as referred to in the affidavit.*'' (Italics ours.)

It appears from this that the complainant, when he swore to the charges, was under the impression that he was verifying the complaint on information and belief and we are not prepared to say that a document so verified is not as definitely a sworn complaint in the case of a board examining the conduct of a doctor as in case of another body considering charges in disbarment proceedings. Section 291 of the Code of Civil Procedure, approved by both the majority and dissenting opinions in *Herron* v. *The State Bar,* 212 Cal. 196 [298 Pac. 474], as a proper and sufficient form of verification, reads as follows: ''The accusation must state the matters charged, and be verified by the oath of some person, to the effect that the charges therein contained are true, *which verification may be made upon information and belief when the accusation is presented by an organized bar association.*'' The words which we have italicized were added to the section in 1921, thereby rendering the authorities upon which appellant relies (*In re Hotchkiss*, (1881) 58 Cal. 39; *In re Hudson* (1884), 102 Cal. 467 [36 Pac. 812]) out of date and uncontrolling for the purpose of his present argument.

The Practice of Medicine Act provides for the filing of ''a sworn complaint'' not requiring, as did the original statute, section 291 of the Code of Civil Procedure, that the verifica-

tion in disbarment cases must be upon the personal knowledge of the affiant, and it seems clear that the requirement of this "Medical Practice Act", as it is generally known, is met when the verification is merely on information and belief. Further, if a fraud was committed in connection with this verification it avails appellant nothing, under the rule referred to in *Pico* v. *Cohn*, 91 Cal. 129, 133 [25 Pac. 970, 27 Pac. 537, 25 Am. St. Rep. 159, 13 L. R. A. 336], for it cannot be characterized as extrinsic fraud, since the affidavit bears directly on the charges considered by the respondent board. It follows from the foregoing considerations that appellant's second ground of appeal must fail.

 As to the remaining ground, insufficiency of the evidence to support the allegations of the complaint, we find from a complete review of all the evidence, not insufficiency, but merely a conflict in the evidence. Since there was, in our opinion, sufficient testimony not inherently improbable in its nature to warrant the findings reached by respondent board, we hold that there is no merit in this third ground of appeal.

Judgment affirmed.

Conrey, P. J., and York, J., concurred.