[Civ. No. 25022. Second Dist., Div. One. Mar. 16, 1962.]

SEYMOUR WAYNE, Plaintiff and Appellant, v. BUREAU OF PRIVATE INVESTIGATORS AND ADJUSTERS, DEPARTMENT OF PROFESSIONAL AND VOCATIONAL STANDARDS, Defendants and Respondents.

428

Joseph G. Hurley and Henry E. Kappler for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Warren H. Deering and John M. Huntington, Deputy Attorneys General, for Defendants and Respondents.

FOURT, J.—This is an appeal from a judgment which in effect denied appellant's amended petition for a writ of mandate, seeking a review of the order of respondent Bureau of Private Investigators and Adjusters, suspending appellant's license for a period of 90 days.

A résumé of some of the facts is as follows:

On or about May 4, 1959, the Bureau of Private Investigators and Adjusters, hereinafter referred to as "Bureau," filed an accusation against appellant charging him with conduct in violation of section 7553.2, subdivision (a) of the Business and Professions Code[1] and alleging that by reason

<hr />

[1]Section 7553.2 of the Business and Professions Code provides as follows:

"Dishonesty or fraud. . . .

"The director may suspend or revoke a license issued under this chapter if he determines that the licensee or his manager, if an individual, or if the licensee is a person other than an individual, that any of its officers, directors, partners, or its manager, *has committed any act in the course of the licensee's business constituting dishonesty or fraud.*" (Emphasis added.)

" 'Dishonesty or fraud' as used in this section includes, in addition to other acts not specifically enumerated herein:

of said conduct grounds existed for suspension or revocation of appellant's license as a private investigator and adjuster.

On July 23, 1959, a hearing was held on said accusation, at which hearing appellant appeared and was represented by counsel and offered evidence in his own behalf.　■　At the conclusion of the hearing a request to amend the accusation was made by the Bureau. Over appellant's objection the hearing officer granted leave to amend the accusation and on July 24, 1959, the Bureau served the amended accusation on appellant. This amended accusation deleted references to section 7553.2, subdivision (a) of the Business and Professions Code and alleged that appellant had violated section 7553.2 of the Business and Professions Code.

The amended accusation further deleted the charge with reference to an alleged false representation made to one Samuel Dashev and amended two counts of the previous accusations by charging that it was a duly authorized representative of appellant, rather than the appellant, who obtained statements from traffic accident victims Marie de la Garrigne and Leonard Goldberg, by making false representations.

Objections to the amended accusation were considered and overruled, and additional time was granted until September 4, 1959, for the filing of written briefs.

On September 17, 1959, the hearing officer issued a proposed decision which found the following facts to be true:

"I

". . . [T]he complainant, M. F. Flynn, has been and now is a duly authorized and acting Special Investigator for the Bureau of Private Investigators and Adjusters of the State of California, and made the Accusation herein in his official capacity as such Special Investigator and not otherwise.

"II

". . . Seymour Wayne, heretofore was issued a license to operate as a private investigator and adjuster by the Bureau

---

"(a) Knowingly making a false statement relating to evidence or information obtained in the course of employment, or knowingly publishing a slander or a libel in the course of business;

"(b) Using illegal means in the collection or attempted collection of a debt or obligation;

"(c) Manufacture of evidence;

"(d) Acceptance of employment adverse to a client or former client relating to a matter with respect to which the licensee has obtained confidential information by reason of or in the course of his employment by such client or former client." (Added Stats. 1957, p. 3085.)

of Private Investigators and Adjusters, Department of Professional and Vocational Standards of the State of California. Said license has not been suspended or revoked and is now in full force and effect.

"III

"On or about April 14, 1957 respondent [i.e., Wayne] visited the home of one Kenneth G. Bell for the purpose of obtaining a statement from said Bell regarding an automobile accident in which Bell had been involved. Respondent was engaged for this purpose by a party whose interests were adverse to Bell.[2] Prior to giving a statement, Bell asked respondent in substance, 'Are you National?,' (Bell's insurer). *Respondent did not affirmatively reply that he was 'National' but represented himself as an investigator, and did not disclose to Bell that he represented an adverse party.* Respondent was aware that said Bell probably would not give a statement to him if respondent revealed that he was acting on behalf of an adverse party. Bell believed that respondent represented his insurer, and thereupon gave respondent a statement about the accident.

"IV

"On or about January 10, 1959 the respondent visited the home of Mr. and Mrs. Jack Weinstock for the purpose of obtaining a statement from them regarding an automobile accident in which Mrs. Weinstock had been involved. The respondent was engaged for this purpose by a party whose interests were adverse to the Weinstock's interests. *Said Weinstock asked respondent for identification, and respondent identified himself as an investigator, and did not disclose to Weinstock that he was acting on behalf of an adverse party.* Respondent was aware that the Weinstocks probably would not give a statement to him if respondent revealed that he was acting on behalf of an adverse party. Said Weinstocks believed that respondent represented their insurer, and gave respondent a statement about the accident.

"V

"On or about July 16, 1958 one Terry Arnold, an employee of respondent, visited the home of Ronald D. Garrahan for

---

[2]The reporter's transcript of the hearing before the hearing officer contains the stipulation that Wayne "in each instance . . . represented the adverse party. . . ."

the purpose of obtaining a statement from him regarding an automobile accident in which Garrahan had been involved. Said Arnold was then acting in the course of his employment by respondent on behalf of a person whose interests were adverse to Garrahan. *In accordance with respondent's instructions as to the manner and method of obtaining statements, Arnold identified himself as the investigator 'assigned to check the accident', and did not disclose to Garrahan that he was acting on behalf of an adverse party.* Said Garrahan believed that Arnold represented his insurer and gave Arnold a statement about the accident.

"VI

"On or about July 16, 1957, an employee of respondent visited the home of Marie de la Garrigne for the purpose of obtaining a statement from her regarding an automobile accident in which she had been involved. Said employee was then acting in the course of his employment by respondent on behalf of a person whose interests were adverse to said Garrigne. *In accordance with respondent's instructions as to the manner and method of obtaining statements, said employee identified himself as an investigator checking out the accident, and did not disclose to Garrigne that he was acting on behalf of an adverse party.* Said Garrigne believed that this employee represented her insurer and gave him a statement about the accident.

"VII

"In about August, 1957, respondent telephoned the home of one George Mathias and arranged an appointment with said Mathias for the purpose of obtaining a statement about an automobile accident in which Mathias had been involved. *Respondent introduced himself on the telephone as 'the investigator checking out the accident'. He then visited the home of Mathias at the appointed time, where he was aware that he was received as a representative of Travelers Insurance Company, the insurer of Mathias. Respondent was not a representative of said company, but was instead a representative of a party adverse to Mathias, and concealed this from Mathias.* Respondent knew that he probably would not obtain a statement from Mathias if he revealed that he was acting on behalf of an adverse party. Said Mathias, believing that respondent represented his insurer, gave respondent a statement about the accident.

## "VIII

"On or about August 21, 1958 one John Kroh, an employee of respondent, visited the home of Leonard Goldberg for the purpose of obtaining a statement from him regarding an automobile accident in which Goldberg had been involved. Said Kroh was then acting in the course of his employment by respondent on behalf of a person whose interests were adverse to Goldberg. *In accordance with respondent's instructions as to the manner and method of obtaining statements, Kroh identified himself as an 'independent investigator assigned to check your accident', and did not disclose to Goldberg that he was acting on behalf of an adverse party.* Said Goldberg believed that Kroh represented his insurer and gave him a statement about the accident.

## "IX

"The respondent testified that it is difficult for an investigator to get a statement about an automobile accident from an adverse party if he identifies himself. Respondent is aware that people he interviews are usually expecting an adjustor from their own insurer. His standard procedure, used by himself and his employees acting on his instructions, is to identify himself as 'the investigator checking out your accident.' If asked if he represents their insurer, respondent, and his employees acting on his instructions, usually state that, 'I am an independent investigator assigned to check out the accident.' Respondent does not reveal who he represents because he is aware that he probably will not be given a statement if he fully identifies himself. *He does not actively misrepresent that he is from an interviewee's insurer, and instructs his employees not to do so.* Respondent has interviewed about 10,000 persons for plaintiff's attorneys since receiving his license in 1953. There has been no complaint that his investigation reports were not true reports of his interviews." (Emphasis added.)

Predicated upon the above set forth finding of facts, the hearing officer concluded that the "respondent has committed acts in the course of his business constituting dishonesty and fraud which is cause for suspension or revocation of his license under Section 7553.2 of the Business and Professions Code" and proposed an order that respondent's license be suspended for a period of 90 days.

Thereafter, on November 2, 1959, respondent Vincent S.

Dalsimer, as Director of the Department of Professional and Vocational Standards, by his decision and order, adopted the proposed decision of the hearing officer except that the penalty was ordered reduced under section 11517, subdivision (b) of the Government Code, and appellant's license was suspended for 90 days, of which the execution of 60 days of said period was stayed for two years and appellant placed on probation.

Subsequently appellant filed a petition in the superior court seeking a writ of mandate to compel the respondent Bureau to set aside its order and decision. An alternative writ of mandate was issued and respondents filed their return by way of answer.

Trial was held and the administrative record was before the superior court.[3] The reporter's transcript of the proceedings held in the superior court discloses that appellant was *"willing to stand on the Findings of the hearing officer"* but not upon the conclusions drawn from such findings. (Emphasis added.)

The trial court denied appellant's petition. Findings of fact and conclusions of law were filed May 9, 1960. Therein were set forth the facts relating to the hearing which was held before the hearing officer; and the hearing officer's proposed decision and the decision and order of the Director of the Department of Professional and Vocational Standards were set forth *in haec verba.* The trial court further found:

## "X

"That the court has carefully considered the findings, determination of issues and order constituting the decision of respondent VINCENT S. DALSIMER; that the court has independently reviewed the complete record and the proceedings before the respondents, and the court has evaluated and given consideration only to the legally admissible evidence and the court independently finds:

"A. That respondents did not proceed without, nor in excess of, their jurisdiction;

"B. That petitioner received a fair trial and a fair hearing at all stages of the administrative proceedings before respondents;

"C. That respondents, and each of them, have proceeded herein in the manner required by law;

---

[3]The reporter's transcript of the administrative proceedings was introduced into evidence as Petitioner's Exhibit 1.

"D. That the Order and Decision including the Determination of Issues is supported by the findings of respondent Bureau of Private Investigators and Adjusters;

"E. That said findings of the Bureau of Private Investigators and Adjusters are supported by the weight of the competent evidence;

"F. That there was no prejudicial abuse of discretion by respondents or by any of them;

"G. That said Decision and Order . . . should not be set aside nor annulled nor vacated; that, on the contrary, it should immediately be placed in full force and effect."

The trial court's conclusions of law are as follows:

"I

"That petitioner's conduct and the conduct of his employees, as set forth in the findings of fact of the Order and Decision of the Bureau of Private Investigators and Adjusters constituted acts of fraud and dishonesty committed in the course of petitioner's business as a licensed Private Investigator and Adjuster within the meaning of section 7553.2 and former section 7551 of the Business and Professions Code of the State of California.

"II

"That by reason of said acts of petitioner, and said acts of his employees, petitioner has violated the provisions of section 7553.2 and former section 7551, of the Business and Professions Code of the State of California, and respondent has thereby subjected his said license to disciplinary action under said provisions of law.

"III

"That in the conduct of the administrative hearing, and in the adoption and issuance of the Decision and Order by the Bureau of Private Investigators and Adjusters:

"A. Respondents did not proceed without, nor in excess of their jurisdiction;

"B. Petitioner received a fair trial and a fair hearing and was afforded due process of law and the equal protection of the law at all stages of the administrative proceedings;

"C. Respondents, and each of them, proceeded in the manner required by law;

"D. The Order and Decision of respondent Bureau of Private Investigators and Adjusters is supported by the findings;

"E. The findings and each of them are supported by the weight of the competent evidence;

"F. There. was no prejudicial abuse of discretion by respondents or by either of them;

"G. The Decision and Order of the Bureau of Private Investigators and Adjusters should not be set aside nor annulled nor vacated, that, on the contrary, the decision should be sustained."

Formal judgment in favor of respondents was entered and this appeal. followed.

Appellant's primary contention is that the evidence does not support the findings of fact, conclusions of law and judgment in that there was no evidence to support the finding that appellant and his employees had committed acts of fraud and dishonesty in the course of business as a licensed private investigator *and* adjuster.

The essence of the purported "fraud and dishonesty" is that appellant or his employee did not disclose that he was acting on behalf of an adverse party. The facts as found show that appellant's standard procedure is to identify himself as "the investigator checking out your accident." He does not reveal whom he represents because he is aware that he probably will not be given a statement if he fully identifies himself. *"He does not actively misrepresent that he is from an interviewee's insurer, and instructs his employees not to do so.* Respondent [i.e., Wayne] has interviewed about 10,000 persons for plaintiff's attorneys since receiving his license in 1953. There has been no complaint that his investigation reports were not true reports of his interviews." (Emphasis added.)

The main question for this court to determine is whether the acts and conduct of petitioner constituted dishonesty or fraud as those words are used in the statutes in question.

 Dishonesty may very well be something less than criminality. In other words, fraud and dishonesty extend beyond acts which would be criminal.

The term dishonesty seems to be incapable of exact definition or precise limitation because among other things of the infinite variety of circumstances which affect the relations and affairs of mankind in our society.

Speaking of the term dishonesty Justice Cardozo said in *World Exchange Bank* v. *Commercial Casualty Ins. Co.,* 255 N.Y. 1 [173 N.E. 902, 903], "The appeal is to the mores rather

than to the statutes. Dishonesty, unlike embezzlement or larceny, is not a term of art. Even so, the measure of its meaning is not a standard of perfection, but an infirmity of purpose so opprobrious or furtive as to be fairly characterized as dishonest in the common speech of men.''

There can be no doubt that the petitioner in this case did not act entirely in good faith with the persons he interviewed in this, that he knew the interviewees wanted in fact to know whom he represented, he knew that he did not tell the interviewees the whole truth about whom in fact he represented, and further he knew from what he told the interviewees that they were mistakenly of the belief that in some capacity or way he was connected or associated with those whose interests were with the interviewees. There was a want of full probity or fairness in the transactions. The petitioner was acting as he did to the end that he would gain a benefit to himself and those companies or persons whom he represented to the disadvantage of the interviewees or the insurance carriers of the interviewees. It was not a simple or casual omission to tell the exact and whole truth on a single occasion, but to the contrary was a studied course deliberately to mislead the unwary and by telling part truths thereby to deceive the interviewees into believing that petitioner in some respect represented their agents or principals.

There was the disposition to deceive, betray and mislead the interviewees. In other words, there was a lack of complete integrity.

Fraud embraces ·multifarious means whereby one person gains an advantage over another and means in effect bad faith, dishonesty or overreaching.

There is no doubt that a false impression may consist in a concealment of what is true as well as the assertion of what is false. (See *Commonwealth* v. *Smith,* 242 Ky. 365 [46 S.W. 2d 474, 477].) The causing or the bringing about of false impressions under the circumstances constitutes fraud. The petitioner here in effect admits that had he refused to give any answers to the questions put to him by the interviewees with reference to whom he represented that undoubtedly he would have had to return to his office with no statements. He elected to suppress or intentionally withhold information from the interviewees which, had it been given, would have resulted in the interviewees' being fully informed. His motive was obvi-

ous. It was said in *Commonwealth* v. *Smith, supra,* at page 478 [46 S.W.2d] :

"Fraud vitiates whatever it touches. 'It is a generic term which embraces all the multifarious means which human ingenuity can devise and are resorted to by one individual to get an advantage over another. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling and unfair ways by which another is cheated.' [Citations.] 'Actual fraud' may be discovered as follows, 'when the party intentionally, or by design, misrepresents a material fact, or produces a false impression in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him; in every such case there is positive fraud, in the truest sense of the terms.' [Citations.] 'The principal difference between "actual" and "constructive" fraud is that in the first case there is an intent to induce another to part with property or surrender some legal right, while in the other, although the act may accomplish that purpose, there is no such intent on the part of the actor.' "

With these principles in mind it is easy to see how the hearing officer, the bureau, the director and the trial judge determined that petitioner was guilty of dishonesty and fraud. We also are of the opinion that under the circumstances the conduct complained of constituted dishonesty or fraud as those terms are used in the statutes in question.

The next contention of appellant is that it was error for the court to find that appellant violated section 7553.2 and section 7551 of the Business and Professions Code.

Section 7551 of the code in question provided in part prior to the amendment of 1957 as follows:

"The director may suspend or revoke a license issued under this chapter if he determines that the licensee or his manager, if an individual, or if the licensee is a person other than an individual, that any of its officers, directors, partners, or its manager, has:

"

"(e) Committed any act in the course of the licensee's business constituting dishonesty or fraud. . . ." (Emphasis added.)

In 1957 the act regulating private detectives was amended by adding section 7553.2, which has heretofore been set forth in a footnote. It is at once apparent that section 7553.2 con-

tains a continuation of what was formerly subsection (e) of section 7551. There was never the slightest doubt of what the charges were against the petitioner. When a statute is repealed and all or some of its provisions are reenacted at or about the same time the reenacted provisions continue in force without interruption. (*Sekt* v. *Justice's Court*, 26 Cal.2d 297, 306-307 [159 P.2d 17, 167 A.L.R. 833]; *Cort* v. *Steen*, 36 Cal.2d 437, 440 [244 P.2d 723]; *Estate of Childs*, 18 Cal.2d 237, 245 [115 P.2d 432, 136 A.L.R. 333]; *Sobey* v. *Molony*, 40 Cal.App.2d 381, 385-386 [104 P.2d 868]; *Haines* v. *Department of Employment*, 125 Cal.App.2d 304, 306 [270 P.2d 72]; *Barron* v. *Board of Dental Examiners*, 44 Cal.App. 2d 790, 794 [113 P.2d 247].)

 The amendments to the charges were proper under the circumstances.

 There is no merit to the appellant's assertion that the claims were stale. Suspension or revocation proceedings with which we are here concerned are not governed by the criminal statutes of limitation. (See *Meade* v. *State Collection Agency Board*, 181 Cal.App.2d 774 [5 Cal.Rptr. 486]; *Murrill* v. *State Board of Accountancy*, 97 Cal.App.2d 709, 712 [218 P.2d 569]; *Molina* v. *Munro*, 145 Cal.App.2d 601, 606 [302 P.2d 818]; *Rudolph* v. *Athletic Com.*, 177 Cal. App.2d 1, 22 [1 Cal.Rptr. 898]; *Bold* v. *Board of Medical Examiners*, 133 Cal.App. 23, 25-26 [23 P.2d 826]; *Hartman* v. *Board of Chiropractic Examiners*, 20 Cal.App.2d 76, 78 [66 P.2d 705].) In any event the first misconduct charged in this case took place on April 5, 1957, and the accusation was filed in May 1959.

 Appellant also asserts that the terms used in the statute are so vague and uncertain that the statute is in contravention of the due process of law clauses of the Constitutions of California and the United States. The burden is upon the appellant to overcome the presumption of constitutionality of the statutes. (*Denny* v. *Watson*, 114 Cal.App.2d 491, 495 [250 P.2d 692].) He has not sustained the burden. The statute is capable of a reasonable and practical construction. (See *Drummey* v. *State Board of Funeral Directors & Embalmers*, 13 Cal.2d 75, 80 [87 P.2d 848].) Dishonesty has been before the courts of this state heretofore for consideration. (*Hogg* v. *Real Estate Comr.*, 54 Cal.App.2d 712, 717 [129 P.2d 709]; *Midway School District* v. *Griffeath*, 29 Cal.2d 13, 18 [172 P.2d 857]; *Taylor* v. *Bureau of Private*

*Investigators & Adjusters,* 128 Cal.App.2d 219, 228 [275 P.2d 579]; *Wallis* v. *State Bar,* 21 Cal.2d 322, 328 [131 P.2d 531].) It would be almost impossible to draft a statute which would specifically set forth every conceivable act which might be defined as being dishonest.

We have considered the other contentions of appellant and find no merit therein.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 9, 1962.