257 Cal.App.2d 141 (1967)
64 Cal. Rptr. 650
CLARENCE K. LUNDBORG, Plaintiff and Respondent,
v.
DIRECTOR OF THE DEPARTMENT OF PROFESSIONAL AND VOCATIONAL STANDARDS, Defendant and Appellant.
Docket No. 24536.
Court of Appeals of California, First District, Division Two.
December 19, 1967.
*142 Thomas C. Lynch, Attorney General, Wiley W. Manuel and Roderick Walston, Deputy Attorneys General, for Defendant and Appellant.
Hutchinson & Quattrin and J. Albert Hutchinson for Plaintiff and Respondent.
TAYLOR, J.
This is an appeal by the Director of the State Department of Professional and Vocational Standards, hereafter Director, from a judgment ordering that a writ of mandate be issued to set aside his order revoking the private investigator's license of Clarence K. Lundborg, hereafter Lundborg. The Director contends that the superior court erred in ruling that a prior civil judgment against Lundborg was not res judicata as to the revocation and that, in any event, the trial court erred in failing to remand the matter to the administrative agency for reconsideration.
[1] The Bureau of Private Investigators and Adjusters (hereafter Bureau), a division of the Department of Professional and Vocational Standards (hereafter Department), is a statewide administrative agency created by statute (Bus. & *143 Prof. Code, § 7500, et seq.) having no constitutionally conferred adjudicatory powers, and its decision is subject to an independent weighing of the supporting evidence by the trial court pursuant to section 1094.5 of the Code of Civil Procedure (Sears, Roebuck & Co. v. Walls, 178 Cal. App.2d 284, 288 [2 Cal. Rptr. 847]; Moran v. Board of Medical Examiners, 32 Cal.2d 301, 308 [196 P.2d 20]).
The facts are as follows. On July 28, 1964, the Bureau filed an accusation charging that Lundborg had committed an act constituting dishonesty or fraud in violation of sections 7551 and 7528, subdivision (b), of the Business and Professions Code[1] (hereafter Code). On July 8, 1965, a hearing on the accusation[2] was held before a hearing officer of the Office of Administrative Procedure, acting on behalf of the Director, pursuant to section 11500, et seq. of the Government Code, as provided for by sections 7530.5 and 7550 of the Code. At the hearing, it was established that Lundborg had been licensed as a private investigator since February 1951, with the most recent renewal of his license occurring on March 7, 1962.
Mrs. Marjorie Opal Flannery (hereafter Marjorie) testified that in 1960 and 1961, she was known as Marjorie Walbrecht and was dating Mr. Lundborg. In October 1960 they discussed marriage and decided they did not need two homes. Accordingly, she sold her home in Redwood City, moved some of her furniture into Lundborg's home, and moved into an apartment. After Marjorie decided to invest the proceeds of the sale of her home in a duplex, on advice of her attorney, Lundborg indicated that an investment in his school for private detectives, the Lundborg Institute, would be a better investment. He showed her the pamphlets and brochures of the school, as well as its new location in larger quarters in the Masonic Building on Van Ness, and explained that he needed the money for the expansion. He indicated that the Institute was then doing very well and had a branch in Redwood City as well as another out of state.
*144 Thereafter, against the advice of her own attorney, Marjorie sold the duplex and transferred $5,000 of the proceeds to Lundborg's account. He wished the transaction to be a loan and executed a promissory note to her for $5,000. Subsequently, she ordered some stereo equipment for Lundborg's use in his Institute. However, when he indicated he was more in need of $830 cash, she cancelled the order for the stereo equipment and gave him the $830. In February 1961 she gave him $150 he needed to make his child support payments. By this time, the relationship had cooled and they ceased to see each other after February 1961. After Lundborg's bankruptcy in January 1962, she sued Lundborg on his promissory note for $5,000 in a civil action in San Mateo County and went bankrupt herself.
At the conclusion of her testimony, the Attorney General offered into evidence a certified copy of the complaint, findings of fact, conclusions of law, and final judgment filed March 20, 1963, in the San Mateo action, wherein the court found that Lundborg had obtained the sums from Marjorie by false representations and false pretenses and entered a judgment in her favor for $7,908, of which $5,830 represented the moneys she had loaned him.[3]
Lundborg did not object to the admission of these documents in the administrative hearing. During the ensuing discussion of their significance, the hearing officer expressed his "feeling" that he was "a little inclined to think" that the doctrine of res judicata barred Lundborg from contesting the allegation that he had committed an act of dishonesty or fraud. Lundborg's attorney (not the same counsel now representing him), agreed that the hearing officer was bound by the judgment, announced his intention to limit his case to facts in mitigation of the offense, and stated that his conversations with the Attorney General indicated that the hearing officer was bound by the final civil judgment. The hearing officer's subsequent remarks (set forth in full below)[4] indicate that the remainder of the hearing was conducted on this basis.
*145 Lundborg offered testimony concerning his school and his relationship with Marjorie, which substantially corroborated her testimony except that he had not seriously mentioned marriage to her as he was not in a financial position to do so after his divorce. In response to a question from the hearing officer, Lundborg indicated he had paid $460 to the attorney on the San Mateo judgment and was negotiating a settlement pending the outcome of the administrative hearing.
On July 19, 1965, the Director issued a decision ordering the revocation of Lundborg's license as of August 16, 1965. Thereafter, Lundborg filed his petition for a writ of mandate pursuant to section 1094.5 of the Code of Civil Procedure. The court, in considering oral and written evidence on the matter, including the transcript of the administrative hearing, exercised its right to independently reweigh the evidence, and held that the Director had prejudicially abused his discretion and acted in excess of his jurisdiction in proceeding on the basis that the civil judgment obtained by Marjorie was res judicata. The court found that Lundborg had not committed an act of dishonesty or fraud as his relationship to Marjorie was personal, social and in contemplation of marriage. Thus, the court issued its peremptory writ of mandate setting aside the Director's decision ordering the revocation of Lundborg's license, and this appeal ensued.
[2a] We turn to the major question on appeal, namely, the propriety of the ruling that the hearing officer erred in concluding that in the license revocation proceedings, the doctrines of res judicata and collateral estoppel applied to the prior civil judgment.
On this appeal, as in the proceedings below, both parties discuss at great length the doctrine of res judicata and its corollary, collateral estoppel, as enunciated in Bernhard v. *146 Bank of America, 19 Cal.2d 807, 810 [122 P.2d 892], and Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd., 58 Cal.2d 601, 604 [25 Cal. Rptr. 559, 375 P.2d 439], and the limitations on the application of the Bernhard decision discussed by the late Brainerd Currie, 9 Stanford Law Review, 281. While we have been duly enlightened by this discussion of counsel on both sides, we, like the learned trial court, have not found it fruitful or helpful to the resolution of the instant case.
We think that the trial court properly ruled that the doctrines of res judicata and collateral estoppel cannot be invoked as a determination of the efficacy of the charge in the present hearing. [3] It has long been established that exoneration in a prior civil action or acquittal in a criminal proceeding is not res judicata in subsequent administrative license proceedings (Saxton v. State Board of Education, 137 Cal. App. 167, 170 [29 P.2d 873]; Bold v. Board of Medical Examiners, 135 Cal. App. 29 [26 P.2d 707]). While the considerations here are somewhat different, the cited cases nevertheless recognize the general proposition that these doctrines do not fit into the purpose of license revocation proceedings (Ready v. Grady, 243 Cal. App.2d 113, 116 [52 Cal. Rptr. 303]).
Our view is confirmed by Title v. Immigration & Naturalization Service (9th Cir.1963) 322 F.2d 21, which held that a prior denaturalization proceeding was not res judicata of the fact of the petitioner's Communist Party affiliation in a subsequent deportation proceeding. Although the holding was in part based on differential proof requirements of such membership in the statutes applicable to the respective proceedings, the court's general reasoning is sound and pertains here. The court stated that the doctrine of collateral estoppel should not have been invoked as, in effect, it deprived the petitioner of the hearing guaranteed him in the deportation procedure, and continued at page 24: "We recognize that the purpose of the doctrines of res judicata and collateral estoppel is to preclude the relitigation of issues previously determined between the same parties and that the application of the doctrines in many cases will have the practical effect of preventing the party against whom the issue was determined from again presenting evidence on that issue. We merely hold that Congress has evinced its intention that an alien have a right to present evidence at a hearing held for the purpose of determining his deportability." (Italics added.)
*147 [4] Similarly here, the hearing officer's application of the doctrine and his limited consideration of the evidence deprived Lundborg of the full and fair hearing required by the statute. Although license revocation is not a criminal sanction, it is in the nature of a penalty in that it deprives the subject of the right to practice his profession. Precisely because of the seriousness of the loss of livelihood, the scope of the hearing and the trial court review for proceedings of this kind is exceedingly broad (Bernstein v. Board of Medical Examiners, 204 Cal. App.2d 378, 385 [22 Cal. Rptr. 419]; Moran v. Board of Medical Examiners, 32 Cal.2d 301, 302 [196 P.2d 20]).
The Director, however, argues that the revocation of Lundborg's license on the basis of the prior civil judgment is authorized by sections 7528, subdivision (b), and 7551, subdivision (l) of the Code. (See fn. 1.) He points out that the statutes, as originally enacted in 1947 (Stats. 1947, § 7551, subd. (e), the predecessor of § 7553.2) provided for disciplinary action against licensed private investigators who commit "any act in the course of the licensee's business constituting dishonesty or fraud," and that in 1949, the statute was amended by the addition of a section providing for disciplinary action against any private investigator who commits an act which is a ground for denial of an application for license under that chapter, and that under section 7528, subdivision (b), "any act constituting dishonesty or fraud" is a ground for such denial.
He contends that by this addition, the Legislature clearly intended the enlargement of disciplinary authority to encompass fraudulent acts committed outside the licensee's business. He contends further that such authority is essential to the object of the act which is to insure beyond question the integrity, professional and otherwise, of private investigators whose business necessarily depends on a certain amount of clandestine activity and whose duties at times are similar to those of law enforcement officers. He argues that to fully protect the public, he must have the power to discipline licensees who do not adhere to the highest standards of conduct in all of their relationships. He concludes that the dishonesty or fraud required need not be sufficient to support a criminal conviction (Wayne v. Bureau of Private Investigators & Adjusters, 201 Cal. App.2d 427, 430 [20 Cal. Rptr. 194]) and that a prior civil judgment is a sufficient basis for the revocation of a license (Denny v. Watson, 114 Cal. App.2d 491 [250 *148 P.2d 692]; Murrill v. State Board of Accountancy, 97 Cal. App.2d 709 [218 P.2d 569]).
The authorities cited, however, do not support the Director's position. In Denny v. Watson, supra (a revocation proceeding involving the State Board of Real Estate Examiners), the applicable statute relating to the licensing of real estate brokers (Bus. & Prof. Code, § 10177.5), specifically provided that the commissioner may, after a hearing, suspend or revoke the license of any licensee whenever a final judgment is obtained in a civil action against him on grounds of fraud, misrepresentation or deceit with reference to any transaction for which a license is required. The statute here in question does not provide that a civil judgment based on fraud is a ground for revocation or suspension, nor does it so limit the acts of dishonesty or fraud to transactions within the business licensed.
Murrill v. State Board of Accountancy, supra, is likewise of no help to the Director as it involved a statute providing that a revocation of an accountant's license could be based on a prior conviction of any crime, an essential element of which was dishonesty, deceit or fraud. Certainly, if the Legislature had intended a prior civil judgment to be of such effect in the case of private investigators, it would have specifically so provided. (See also Richards v. Gordon, 254 Cal. App.2d 735 [62 Cal. Rptr. 466].)
We note that blanket descriptive provisions in licensing statutes, similar to that in the instant case relating to acts outside the licensee's business, have been severely criticized in recent years (18 Stan.L.Rev. 640, and 14 Stan.L.Rev. 533, 536-539.)[5] Such blanket provisions are distinguishable from those where the Legislature has specifically prescribed acts of dishonesty or fraud in the licensee's business as a basis of discipline.[6] Also to be distinguished are those cases where the hearing officer's application of collateral estoppel in making a *149 determination of fraud can be based on a clear statutory provision, as in Denny, Murrill and Richards. [2b] We conclude that where a statute encompasses conduct outside the licensee's business, and makes no reference to the effect of a prior civil or criminal judgment, the hearing officer should carefully weigh all pertinent facts and circumstances, both in the determination of the nature and significance of the alleged misconduct and in its bearing on the fitness of the licensee to carry on his business or profession. The record here indicates that all of the evidence was considered solely on the issue of mitigation.
[5] Since the Director, in the exercise of his discretion, has given only limited application to the facts surrounding Lundborg's relationship with Marjorie, he has committed an error of law and has not conducted a proper hearing. Thus, the matter must be remanded to him for a rehearing (Kramer v. State Board of Accountancy, 200 Cal. App.2d 163, 176-177 [19 Cal. Rptr. 226]; National Auto & Cas. Ins. Co. v. Downey, 98 Cal. App.2d 586 [220 P.2d 962]; Cooper v. State Board of Medical Examiners, 35 Cal.2d 242 [217 P.2d 630, 18 A.L.R.2d 593]). The judgment is reversed with directions to the trial court to remand the proceeding to the Director for a rehearing and redetermination of what discipline, if any, should be imposed in the light of this opinion. Respondent is given his costs on appeal.
Shoemaker, P.J., and Agee, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied February 14, 1968.
NOTES
[1] Section 7551, subdivision (l) provides, so far as pertinent, that the Director may suspend or revoke a license if the licensee has committed any act that would be grounds for denial of an application for a license. Section 7528, subdivision (b) lists as one of the grounds for denial of a license the commission of "any act constituting dishonesty or fraud."
[2] The accusation as originally filed also charged an act constituting dishonesty or fraud in the course of Lundborg's business as a private investigator pursuant to section 7553.2 of the Code. At the inception of the hearing, it was made clear that the accusation was based solely on an act occurring outside the business.
[3] Although Lundborg had been adjudicated bankrupt, Marjorie's claim against him was preserved by section 17 of the Bankruptcy Act, which prohibits the discharge in bankruptcy of obligations incurred by "false pretenses or false representations" (11 U.S.C.A. § 35, subd. (a), subpar. (2)).
[4] "HEARING OFFICER: I would never cut off the respondent from offering evidence in mitigation. After all, there is a vast difference from a reprimand to a revocation or some form of probationary orders or anything else, even assuming he would be guilty. But I was inclined to think I'm stuck on this. I don't like to  I'm stuck with them.

"MR. WALSTON: I think it is true, Mr. Hearing Officer. I think it should also be pointed out that while the respondent does have the opportunity to have mitigation, I don't think this mitigation should be admissible actually to impeach the findings there were false misrepresentations.
"HEARING OFFICER: No. But the mitigation is to the measure of discipline, if any, to be imposed. He can get on the stand and give his version, and certainly I'm bound by the judgment. If it colors it in any way favorably in his light, I don't have to revoke his license, if you want me to put it that crudely. I didn't say I was going to, anyhow, but it's a kind of hard thing to do, but I think he is entitled, under the Administrative Procedure Act, to present anything by way of mitigation if it indirectly or collaterally affects the judgment. Well, so what? So be it."
[5] As another perceptive critic has pointed out, good character is undoubtedly desirable in everyone, whether under license or not. But to expose everyone's occupational future to some official's appraisal of his moral soundness is quite another thing, and should not be permitted unless it has a distinct relevance to the subject matter of the license (W. Gellhorn, Individual Freedom and Government Restraints, ch. 3, The Right to Make a Living, p. 129.)
[6] For example, in Taylor v. Bureau of Private Investigators, 128 Cal. App.2d 219, this court affirmed the temporary suspension of the license of a private investigator where section 7551, subdivision (e) then permitted suspension or revocation of a licensee who "[c]ommitted any act in the course of the licensee's business constituting dishonesty or fraud" and where the licensee had stated that he was representing the insurance company concerned when, in fact, he was representing the party adverse to the interests of the company. Wayne v. Bureau of Private Investigators & Adjusters, 201 Cal. App.2d 427 [20 Cal. Rptr. 194], and Denny v. Watson, supra, also involved similar kinds of deception practiced in the course of the particular business licensed.